**MICHIGAN CITY AREA SCHOOLS, Plaintiff-Appellant,**

v.

**Jack SIDDALL, individually and in his capacity as agent for the Michigan City Area Schools Classified Association, and Michigan City Area Schools Classified Association, and Dianna Kahn, Diane Novak and Sarah Kowalski, individually and as representatives of a class composed of all striking classified employees employed by the Michigan City Area Schools, Defendants-Appellees.**

**No. 3–580A144.**

Court of Appeals of Indiana, Third District.

Oct. 29, 1981.

Merlyn C. Bartlett, Michigan City, Edward L. Volk, Daniel E. Lewis, Jr., Newby, Lewis, Kaminski & Jones, La Porte, for plaintiff-appellant.

Wayne O. Adams III, Christine J. Ratliff, Bingham, Summers, Welsh & Spilman, Indianapolis, for defendants-appellees.

GARRARD, Judge.

This is an action for injunctive relief in a labor dispute involving non-teaching employees of the Michigan City Area Schools (the school).

It appears that during the late summer of 1979 the school board adopted a voluntary policy for collective bargaining with its non-teaching employees (hereafter referred to as the classified employees).[1] In August a number of these employees: bus drivers, custodians, cooks and maintenance people,

---

1. Supervisors and confidential employees were also excluded. In addition, provision was made for separate treatment of full time and part time employees.

refused to perform their work assignments. The central issue in dispute was the school's refusal to recognize and negotiate with the individual selected by the classified employees to represent them.

The voluntary recognition and bargaining policy adopted by the school was expressly conditioned upon two factors. It would not recognize a classified employee organization if the organization had any members who were not employees of the school, and it would not negotiate with "representatives" who were neither employees of the school nor attorneys. In explanation of these requirements the policy stated,

"The intent of this definition is for the school corporation to recognize only local classified school employee organizations made up solely of full-time classified employees and/or part-time classified employees, while recognizing any individual employee's right to join any organization of the employee's choice."

The policy statement provided that the school would bargain collectively on certain subjects with a properly selected representative. The policy statement also expressed the school's retained right to revoke or change the policy declaration at any time with the proviso that no such action would affect any collective bargaining contracts that might have been entered into.

The classified employees indicated their desire to be represented in negotiations by an employee of the Indiana State Teachers' Association who was neither an employee of the school nor an attorney.

When the school refused, the strike ensued. The school then sought an injunction to prohibit the strike activity and the classified employees counterclaimed seeking to restrain the school from interfering with their choice of bargaining representatives. After a hearing the trial court permanently enjoined the classified employees from participating in a strike, restrained the school from interfering with or in any way preventing the classified employees from selecting the person or persons of their choice "to be their bargaining representative," and ordered the parties to engage in collective bargaining.[2]

The school appeals contending that the orders restraining it from interfering with the choice of bargaining representative and mandating it to bargain collectively are contrary to law. Despite the practical wisdom in the trial court's decision, we are required to sustain the appeal.

In order to properly consider the issues presented it is necessary to briefly consider the legal posture of the parties.

■ Under the common law there is no legal duty for employers and employees to engage in the collective bargaining process. *Co. Dept. of Public Welfare v. Amer. Fed. S. C. & M. E., AFL–CIO* (1981), Ind.App., 416 N.E.2d 153. In addition, the public employees involved in this dispute are not covered by the Indiana Teacher Bargaining Act, IC 20–7.5–1–1 *et seq.*, or the National Labor Relations Act, as amended. 29 U.S. C.A. § 152(2).[3]

On the other hand, the School Powers Act, IC 20–5–2–2(7), authorizes school boards to employ such persons as it needs in the work categories occupied by the classified employees and fix their salaries and compensation.[4] We have previously held that such authority is sufficient to validate collective bargaining contracts entered into by the parties. *Gary Teachers Union v. School City of Gary* (1972), 152 Ind.App. 591, 284 N.E.2d 108.

■ Furthermore, it is clear that an individual's constitutionally protected freedoms of speech and association permit the classified employees to join a labor organization

---

**2.** Additional provisions in the order are not challenged on appeal, nor is that portion enjoining the strike activity. *See, e. g., Anderson Fed. of Teachers v. School City* (1969), 252 Ind. 558, 251 N.E.2d 15, *cert. den.,* 399 U.S. 928, 90 S.Ct. 2243, 26 L.Ed.2d 794.

**3.** IC 22–6–4–1 applying generally to public employees was declared unconstitutional. *IEERB v. Benton Comm. Sch. Corp.* (1977), 266 Ind. 491, 365 N.E.2d 752.

**4.** School bus drivers are the subject of separate legislation. *See* IC 20–9.1–1–1 *et seq.*

of their choice, although no duty is thereby imposed upon the school to deal with the organization or its representatives, *Co. Dept. of Public Welfare, supra.*

■ That fact is critical. If there is no legal obligation statutorily or at common law to engage in good faith collective bargaining with a duly chosen agent of a group of employees, there is no *illegal* interference with an employee's constitutional freedom of speech or association where an employer does no more than refuse to recognize and engage in collective bargaining with some employee selected organization or its agents.[5] In the absence of legal obligation the employer has the same freedom of choice to deal with or reject dealing with a "bargaining" agent that any party has in electing whether or not he wishes to deal with another party's admittedly authorized agent or servant.

■ It is first suggested that we determine the impact of IC 22–7–1–1 and 2 upon this analysis. This statute, originally enacted in 1957, provides,

"22–7–1–1. As used in this act [22–7–1–1, 22–7–1–2], the term 'local union' shall mean any branch or chapter of a national labor organization, the jurisdiction of which is limited to a particular geographical area."

"22–7–1–2. No worker or group of workers who have a legal residence in the state of Indiana shall be denied the right to select his or their bargaining representative in this state, or be denied the right to organize into a local union or association to exist within and pursuant to the laws of the state of Indiana: Provided, That this act shall in no way be deemed to amend or repeal any of the provisions of the National Labor Relations Act [U.S.C., tit. 29, §§ 151–166]."

Sitting *en banc* the Appellate Court determined in *Peters v. Poor Sisters of Saint Francis Seraph* (1971), 148 Ind.App. 453, 267 N.E.2d 558, that these provisions did not impose upon an employer either a duty to recognize a union as collective bargaining agent or a duty to engage in the collective bargaining process. The court instead, at 267 N.E.2d 562, adopted Professor Getman's analysis,

" 'At first reading this appears to be a significant statute. The right of employees to select a bargaining representative seems to imply that management is required to recognize and bargain with a properly chosen union. But careful reading of the statute indicates that it was not meant to impose a duty on employers to bargain collectively. The title and language of the statute suggest that its primary purpose was to permit the *forma*tion of local unions and that the legislature intended to prevent undue control by national unions over local members. This interpretation is supported by such unofficial legislative history as can be found, and by the absence of a remedy for violation or provision for determining questions of majority choice. Even the unnecessary reference to the NLRA suggests an attempt to regulate union internal organization rather than collective bargaining.' 42 Ind.Law Journal, p. 87."

We, therefore, conclude that the cited statute has no impact on the bargaining issue before us. While it is consistent with the employees' rights of free association, as already discussed, it is unnecessary to their recognition.

The only remaining question, then, is the impact of the school's policy statement upon what must otherwise be held its freedom of choice to engage in voluntary bargaining. *See Petri Cleaners, Inc. v. Automotive Employees, etc.* (1960), 53 Cal.2d 455, 2 Cal. Rptr. 470, 349 P.2d 76.

The policy adopted by the school board, as already outlined, stated that it would recognize for purposes of voluntary collective

---

**5.** Illegal interference exists, instead, where the employer seeks to penalize or take action against the employee for the actions of associating. *See, e. g., NAACP v. Button* (1963), 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; *Shelton v. Tucker* (1960), 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231.

bargaining an organization of its classified employees in an appropriate unit,[6] set forth a mechanism for determining such units and affirmed that it would engage in collective bargaining with the employees' duly selected representative. It expressly conditioned its willingness, however, by restricting its obligation under the policy statement to organizations consisting exclusively of its employees and the use of bargaining representatives (negotiators) who were either employees of the school or attorneys. Regardless of the practical wisdom of either or both such restrictions, there appears to us to be no reason to invalidate them and the employees have advanced none except the assertion that they should be entitled to choose whomsoever they desired.

The school has no legal obligation to engage in collective bargaining with the classified employees. However, it may do so voluntarily, and accordingly could properly declare qualifications or restrictions establishing a basis upon which it would agree to bargain collectively.

It follows that since the classified employees did not comply with the policy conditions, there was no enforceable duty requiring the school to engage in collective bargaining. The court's injunction was, therefore, in this regard contrary to law.

Moreover, since the school was free to impose the conditions referred to, it did not illegally interfere with the employees' constitutional right to select whomsoever they desired as agent by refusing to deal with that agent. The point being that the school had no obligation to bargain collectively under the circumstances. Since there was, therefore, no evidence of illegal interference it was error for the court to enjoin the school from interfering with the employees' selection of bargaining representatives. See Mullis v. Arco Petroleum Corp. (D.C. Cir.1974), 502 F.2d 290, 293.

The judgment is therefore reversed and the cause is remanded to the trial court for such further proceedings consistent herewith as may be necessary.

Reversed and remanded.

HOFFMAN, P. J., concurs.

STATON, J., concurs and files separate opinion.

STATON, Judge, concurring.

Although concurring with the Majority Opinion, I wish to clarify my position. As the Majority correctly points out, the "critical fact" in the present case is that the school board is under no legal obligation to engage in collective bargaining. It is upon this fact which both errors of the trial court order rest.

In previous decisions, we have held that school boards have the authority to enter collective bargaining agreements. East Chicago Teachers Union, Local No. 511 v. Board of Trustees of School City of East Chicago (1972), 153 Ind.App. 463, 287 N.E.2d 891; Gary Teachers Union, Local No. 4, American Federation of Teachers v. School City of Gary (1972), 152 Ind.App. 591, 284 N.E.2d 108; but emphasized the permissive nature of that authority in contrast to any mandatory duty to enter negotiations. In the present case, the school board had no statutory, common law or contractual duty to enter negotiations. See, County Department of Public Welfare of Lake County v. American Federation of State, County and Municipal Employees, AFL–CIO, Indiana Council 62 (1981), Ind. App., 416 N.E.2d 153; Peters v. Poor Sisters of Saint Francis Seraph (1971), 148 Ind.App. 453, 267 N.E.2d 558. Therefore, the trial court clearly erred in ordering the school board to negotiate with the employees.

As I recently noted in my concurring opinion to County Department of Public

---

**6.** We do not pass upon the policy's assertion that it would recognize an organization established in accord with its requirements as the exclusive agent for all employees within the unit. See, however, Co. Dept. of Public Welfare, supra. In any event the school could recognize an agent for those employees desiring to be represented by the agent.

*Welfare of Lake County v. American Federation of State, County and Municipal Employees, AFL–CIO, Indiana Council 62, supra,* 416 N.E.2d at 158, n.2:

> "Indiana courts have generally held that public employees may enter into collective bargaining agreements (and, by implication, consent election agreements) with their governmental employers even in the absence of specific statutory authority for collective bargaining... Such collective bargaining agreements are permissive and require the consent of both parties to make them enforceable...." (parentheses original, citations omitted)

Therefore, the collective bargaining process, one which is "permissive" and requires the "consent" of both parties, is based upon historic concepts of freedom to contract.

Apparently the school board, as evidenced by its policy statement, as well as the employees anticipated that their future employment relationship would be controlled by a collective bargaining agreement. The factual context out of which the trial court's order arose may aptly be denominated as "preliminary negotiations" to the formation of that contractual relationship. *See,* 1 Corbin on Contracts, § 22 (1963); 1 Williston on Contracts, § 27 (1957).

The proceedings between the school board and the employees should be viewed the same as any preliminary negotiations by two parties attempting to enter a contract. The school board's "voluntary policy for collective bargaining," as characterized by the Majority, was nothing more than an offer to bargain with the employees if the employees met the two conditions set by the policy. As in any preliminary negotiations, the employees could either accept or reject that offer. The employees chose to reject the school board's offer by not meeting either of the two conditions. The employees thereafter made a counteroffer by sending their chosen bargaining representative to negotiate with the school board. The school board rejected the counteroffer by refusing to negotiate with that representative.

The trial court was faced with a factual situation characteristic of most preliminary negotiations. Whether the first or last step in such negotiations, these are typically offers, counteroffers, acceptances and rejections. Recognizing that a certain amount of "coercion" is placed upon the party *forced* to either accept or reject an offer, I find such "coercion" a necessary by-product of allowing parties to freely bargain and contract. The freedom in the bargaining process necessarily carries the burden of making the choice to accept or reject offers and to bear the resulting consequences from that choice.

In the present case the employees attempt to raise the "coercion" in the preliminary bargaining process to the level of wrongful "interference" with their rights to organize and choose a bargaining representative. *See,* IC 22–7–1–2. However, the school board's policy was a self-imposed restraint setting two conditions precedent to its own negotiating rather than attempt to impose restraints upon the employees. That is, this policy restricts the conditions upon which the school board may negotiate as opposed to an attempt to restrict the conditions upon which the employees may negotiate.

Therefore, the error in the trial court order restraining the school board from "interfering" with the employees' right to organize and choose a representative was that the school board had not interfered with those rights by making its policy statement.