CITY OF MICHIGAN CITY, Indiana, et al., Defendants-Appellants,

v.

FRATERNAL ORDER OF POLICE, et al., Plaintiffs-Appellees.

No. 46A03–8606–CV–169.

Court of Appeals of Indiana,
Third District.

March 25, 1987.

---

Steven C. Snyder, Michigan City, for defendants-appellants.

Craig V. Braje, Michigan City, for plaintiffs-appellees.

GARRARD, Presiding Judge.

Since 1979, Michigan City has annually entered into contracts with its Fraternal Order of Police and International Firefighters Association locals covering terms of employment for its policemen and firemen.

In February 1984 the City allowed its Blue Cross-Blue Shield policy to expire and secured a new group health insurance plan. The new plan improved some benefits, decreased others and had the overall effect of slightly downgrading the benefit package. The City gave notice of the changes and the locals demanded reinstatement of the prior provisions. When the City refused, the locals commenced this action for breach of contract.

At the time of the change both contracts (as had the prior versions) simply provided:

"The Employer shall provide hospital and medical insurance for each Employee and dependents, with the Employer incurring 99 percent of the cost."

Nothing in the contract referred to maintaining any policy "presently in force" and nothing specified, directly or by reference, any particular benefits to be provided.

Nevertheless, the trial court determined that "when the Blue Cross-Blue Shield group policy expired and was not renewed, even though a modified policy was secured, the [City] committed a breach of the collective bargaining agreement." Accordingly the court ordered the City to provide the benefits available under the prior policy.[1] The City appeals.

It may prove helpful, at the outset, to draw a distinction not made by the parties or the court below. "Collective bargaining" normally is taken to refer to the negotiation process between an employer and a properly accredited agent of its employees concerning the wages, hours and working conditions of those employees. A collective bargaining agreement is the contract resulting from those negotiations. Thus, implicit in that terminology is the assumption that a basis in law exists for accreditation (certification) of the employees' bargaining agent.

■ No such basis exists in this case as the law imposes no duty upon the City to bargain collectively with its policemen or firemen, or to accredit (recognize) any organization that wishes to serve as their spokesman. *Michigan City Area Schools v. Siddall* (1981), Ind.App., 427 N.E.2d 464, 466.[2]

The consequence of the foregoing is that the city committed no unfair labor practice or refusal to bargain when it unilaterally elected to change its insurance program.[3] The sole question, and one governed by traditional Indiana contracts law, is whether it breached the existing contract in doing so.

■ One of the rules thus applicable is that oral expressions may not be used to vary the terms of the written contract un-

**1.** The parties stipulated this the appropriate remedy if the contract had been breached.

**2.** A public employee bargaining act was enacted, IC 22–6–4–1 et seq., but subsequently was declared unconstitutional. *IEERB v. Benton*

*Comm. School Corp.* (1977), 266 Ind. 491, 365 N.E.2d 752.

**3.** *See, e.g., Capitol-Husting Co., Inc. v. NLRB* (7th Cir.1982), 671 F.2d 237.

less the contract is determined to be ambiguous or there is a showing of fraud, mistake, illegality, undue influence or duress. *See, e.g., Turnpaugh v. Wolf* (1985), Ind. App., 482 N.E.2d 506.

Similarly, the cases are legion that stand for the proposition that plain and ordinary meaning of the language employed by the parties is to be given controlling effect; under the guise of construction courts should not create for the parties a contract they did not create for themselves. *See, e.g., Miller v. Frankfort Bottle Gas, Inc.* (1964), 136 Ind.App. 456, 202 N.E.2d 395, 397; *Gaw v. LaPorte Corp.* (1956), 126 Ind.App. 143, 130 N.E.2d 790, 792.

As Justice DeBruler explained in *Evansville-Vanderburgh School Corp. v. Moll* (1976), 264 Ind. 356, 344 N.E.2d 831, 837, courts should resort to rules of construction and consideration of extrinsic evidence only after study of the entire contract has failed to make clear its meaning.

**4.** "ARTICLE V: MANAGEMENT RIGHTS AND RESPONSIBILITIES

A. The F.O.P. recognizes the prerogatives of the Employer to operate and manage the Michigan City Police Department's affairs in all respects in accordance with its responsibilities and powers of authority.

B. The Employer has the right to schedule overtime work as required in a manner most advantageous to the Police Department and consistent with requirements of municipal employment and public safety.

C. No policies or procedures covered in this agreement shall be construed as delegating to others, reducing or abridging any of the following authority conferred on City officials, nor used for the purpose of invalidating any of this contract's provisions:

　1. The statutory responsibility of the Mayor as Chief Executive officer of the City for enforcing the laws of the State and the City, passing upon ordinances adopted by the City Council recommending an annual budget, or directing the proper performance of all executive departments.

　2. The responsibility of the City Council for the enactment of ordinances and the appropriation of money.

　3. The responsibility of the Police Chief as governed by statutory provisions, ordinances and departmental rules and as limited by the provisions of this agreement:

　　a. To determine methods, means and employees necessary for departmental operations; and

　　b. To control the department budget; and

■ Here the problem is not so much what the contracts provide as what they do not provide. Both require the City to provide hospital and medical insurance for employees and their dependents and to pay 99% of the cost of such insurance. Neither, however, either expressly or by reference purports to define or place any limitations on any particular forms of coverage.

The contracts, themselves, are many-page documents, each with several signed addendums, covering in considerable detail the many facets of the employer-employee relationship. Each contains what is styled as a Management Rights and Responsibilities clause, the general tenor of which is to provide that the City shall retain all its rights to manage and direct the police and fire forces except as those rights might be contrary to the specific provisions of the contracts. (The text of these clauses is set forth below.[4])

　　c. To take whatever actions are necessary in order to assure the proper functioning of the department.

D. It is agreed by the Employer and the F.O.P. that the City is obligated legally and morally, to provide equality of opportunity consideration and treatment of all members of the Police Department and to establish policies and regulations that will insure such equality for all members employed by the Police Department in all phases of the employment process.

E. It is further intended that this agreement and its supplements shall be an implementation of the authority of the Mayor, the City Council, the Board of Public Works and Safety, the Police Chief, and the rules and regulations promulgated by the Police Chief.

F. The Police Chief shall have the right to make major changes in working conditions without the approval and/or consent of the F.O.P. However, the F.O.P. President shall be given forty-eight hours advance notice of anticipated major changes in working conditions and conferences in good faith shall be held thereon before they are placed in effect. Emergency situations shall be excepted from this provision."

"ARTICLE VI: MANAGEMENT RIGHTS AND RESPONSIBILITIES

A. The employer maintains the exclusive rights to manage the department and to direct the work force (except as expressly contrary to specific provision(s) of this Agreement). Management rights shall include, but not be limited to, the right to: (1) direct the employees; (2) hire, promote, "transfer, and assign; (3) suspend, demote, discharge, or take other disciplinary action; and (4) take any action necessary

There is no contention that the provisions of the agreements should be avoided because of fraud, mistake, duress, etc.

When the insurance clause [5] is viewed in the context of the entire agreement of the parties, it plainly appears that either by design or inadvertence no contractual obligations regarding health insurance were imposed upon the City beyond providing such insurance and paying the specified portion of the premiums.

In the absence of an express contract it would be the prerogative of the City to determine such coverages, *see* IC 36–1–4–15; *Dortch v. Lugar* (1971), 255 Ind. 545, 266 N.E.2d 25, 45. The management rights provisions in the contracts at issue contemplate that the City shall retain that power since no express provisions of the agreement otherwise limit what coverage is to be provided.

Accordingly, the trial court erred in determining that the City breached the contracts when it altered coverages. The judgment is reversed and the case remanded with instructions to enter judgment for the City.

Reversed.

RATLIFF, C.J., and HOFFMAN, J., concur.

in order to maintain the efficiency of the Fire Department, to make reasonable rules and regulations, and determine the methods, means, manner, and personnel by which services shall be rendered.

The Fire Chief shall have the right to make minor changes in past practices and working conditions. However, the Fire Chief shall notify the membership President or his designate, or in the absence of either, any representative of the Union, Forty-Eight (48) hours before the initiation of such changes. Within that time period, if the President requests a conference on the change, the Chief or his Deputy will meet with him to explain the changes. Emergency situations shall be exempt from this provision.

1) Emergency to mean a situation that demands immediate action. It is sudden, unforseen, and urgent.

2) The statutory powers of the Fire Chief shall remain in full effect.

3) 'Minor changes' shall be construed to mean such changes in past practices and working conditions which are not specifically set forth in any other provisions of this contract.

All rights and privileges currently enjoyed by the firefighters, which are not embodied or affected by this agreement shall remain in full force and effect, unless changed as authorized by Paragraphs A of this Article or by mutual consent.

B. The employer has the right to schedule overtime work as required in the manner most advantageous to the Fire Department and consistent with requirements of municipal employment and public safety. Minimum vital fire services shall be construed to be: three (3) firefighters per engine, when in service; two (2) firefighters per truck, when in service; and one (1) radio operator at Central Fire Station.

C. It is agreed by the employer and the membership that the City is obligated, legally and morally, to provide equality of opportunity, consideration, and treatment of all members of the Fire Department and to establish policies and regulations that will insure such equality for all members employed by the Fire Department in all phases of the employment process."

5. We note that the provision concerning City-provided life insurance did detail coverage amounts.