**ANDERSON FEDERATION OF TEACHERS, LOCAL 519 et al., Appellants (Defendants Below),**

**v.**

**Edna Mae ALEXANDER et al., Appellees (Plaintiffs Below).**

**No. 2–1179A365.**

Court of Appeals of Indiana, Second District.

March 4, 1981.

Hopper & Opperman, Indianapolis, for appellant, Anderson Federation of Teachers.

Richard J. Darko, Bingham, Summers, Welsh & Spilman, Indianapolis, for Indiana State Teachers Ass'n, amicus curiae.

James Newton Wilhoit, III, Brown, Younger & Wilhoit, McLean, Va., Michael C. Lacey, Davisson, Davisson & Davisson, Anderson, for appellees.

Robert W. Rund, Indianapolis, for Indiana School Bd. Ass'n, amicus curiae.

BUCHANAN, Chief Judge.

## CASE SUMMARY

The Anderson Federation of Teachers (AFT) appeals from a declaratory judgment by the Madison Superior Court in favor of Edna Mae Alexander (Alexander), invalidating the AFT's agency shop agreement with the Anderson Community School Corporation (Schools).

We affirm.

## FACTS

The facts are undisputed. Local 519 of the Anderson Federation of Teachers is the exclusive representative for collective bargaining of all teachers employed by the Anderson Community School Corporation. In September of 1977, the AFT and the Schools amended their master contract to provide that teachers who are not members of the AFT should have a "representation fee" deducted from their pay. The amendment provided that "the teacher's signature on his/her individual contract shall be authorization for the fee withholding." The schools and the AFT agreed that any teacher who refused to sign a contract because of this provision should be considered to have resigned.

At this point (October 21, 1977) suit was filed by Edna Mae Alexander, and 114 others, all teachers employed by the Anderson Community School Corporation, some tenured and some not, some members of the AFT, and some not. The complaint was in two counts, the first seeking a declaratory judgment that the agency shop agreement was invalid, the second praying an injunction against its being put into effect.

On November 8, 1978, the AFT and the schools revised their agency shop agreement to read, in relevant part, as follows:

(1) The AFT and the employer agree that all members of the bargaining unit who are not also members of the AFT *have an obligation, as a condition of employment, to pay a representation fee to the AFT,* in an amount equal to the membership dues of the AFT less the cost of benefit provided solely for AFT members. This obligation applies to persons who become members of the bargaining unit during the duration of this agreement, on temporary contracts or otherwise, as well as to persons who are members of the bargaining unit on the effective date of this agreement.

(2) The AFT will provide the employer with a list of bargaining unit members who are not also AFT members and the employer shall request each such person to submit a payroll deduction authorization form within a reasonable time. The employer will deduct the representation fee in bi-weekly equal installments from the payroll of each person who submits an authorization. Persons who refuse to sign an authorization form or who revoke an executed form have a continuing enforceable obligation to pay the representation fee directly to the AFT. (emphasis added).

The trial court, granting summary judgment on the first count, invalidated both agency shop agreements, citing three reasons:

1. By providing that the representation fee should be deducted automatically from teachers' salaries, the first agreement violated the requirement of both the Indiana Wage Assignment Act, I.C. 22–2–6–2(a), and the school collective bargaining law, I.C. 20–7.5–1–8, that employers may make deductions from employees' paychecks only upon the written, signed, and revocable authorization of the employees involved.

2. The first agreement's making a refusal to sign an agency shop contract a constructive resignation, and the second's making the payment of representation fees "a condition of employment," create additional grounds for discharging tenured teachers in violation of I.C. 20–6.1–4–10.

3. The trial court could find "no express statutory authority" allowing a public school corporation to enter into an agency shop agreement with a teacher's union. It was therefore beyond the Anderson schools' authority to agree to either the first or the second agency shop clause.

Both clauses were therefore held invalid and unenforceable, and partial summary judgment was entered accordingly. The second count of Alexander's complaint is being held in abeyance pending the disposition of this appeal.

## ISSUE

Since the agency shop agreement of November 8, 1978, has superseded any previous agency shop agreement, we need dispose of the November 8 agreement only. The issue presented for appeal by that agreement is:

Is a provision in a teachers' collective bargaining agreement valid, which makes payment of a representation fee a "condition of employment"?

Because our resolution of this issue suffices to sustain the judgment of the trial court, we reach no other issue raised by either the parties or the amici.

## PARTIES' CONTENTIONS

The parties and the amici regard this case as a fundamental dispute about what is variously denominated "union security" or the "right to work." Apparently they expect ringing declarations from us on this subject with Indiana law subordinate to the larger question. Their most persuasive arguments relate to the Teacher Tenure Act, but as we shall see, the legal solution lies in an unexplored corner of the Certificated Educational Employees' Bargaining Act.

The AFT concedes that "grounds for termination of a teacher in Indiana are strictly those set forth in the Indiana Teacher Tenure Act, I.C. 20–6.1–4–10—I.C. 20–6.1–4–14. . . . Failure to pay the representation fee would not constitute the basis for terminating a tenured teacher." Nonetheless, the AFT and amicus Indiana State Teachers Association (ISTA) insist that there is

no inherent conflict between a teacher tenure law and an agency shop agreement. They point to the affidavit of the superintendent of the Anderson Community School Corporation in which the superintendent swore that the School Corporation "will not terminate the employment of a teacher for failure to pay said representation fee." Therefore, the AFT and ISTA say, the trial court's conclusion that the agency shop agreement adds grounds for dismissal other than those provided for in the Teacher Tenure Act was speculative and premature.

ISTA goes further. It argues that failure to pay a representation fee provided for in a collective bargaining agreement would constitute a "good and just cause" for dismissal under I.C. 20–6.1–4–10(a)(6). To hold otherwise would unreasonably restrict the disciplinary powers of school boards.

Alexander and amicus Indiana School Boards Association (ISBA) argue that the phrase "condition of employment" can scarcely have any meaning other than that the AFT and the Anderson schools meant to institute additional grounds for discharging teachers. Relying on the doctrine of *ejusdem generis*, they argue that a tenured teacher may be discharged only for causes related to pedagogical competence or administrative necessity; and that union security agreements meet neither of these criteria.

## CONCLUSION

This agency shop agreement cannot stand. School Corporations may not make collective bargaining agreements requiring the discharge of teachers.

Because of the special responsibility that school corporations have to the public, their collective bargaining powers are restricted by law. Among these restrictions is the requirement that school employers retain their sole responsibility to hire and fire teachers. The legislature has made it plain that this responsibility belongs to school boards alone, and they may not bargain it away in labor negotiations.

## DECISION

■ At the threshold, we dispose of the AFT's contention that the sentence "The AFT and the employer agree that all members of the bargaining unit who are not also members of the AFT have an obligation, as a condition of employment, to pay a representation fee to the AFT . . .," does not mean that teachers who refuse to pay the fee are liable to discharge. Neither the AFT nor ISTA offer any authority for the proposition that the phrase "condition of employment," in this context, has anything but its evident, unambiguous meaning— that the act described must be performed in order for employment to continue. In fact, the phrase "as a condition of employment" is found both in that form [1] and in the more precise form of "as a condition of continued employment," [2] in contexts in which it is clear that the condition is to be met, or the employee discharged. It would be the acme of judicial opacity for us to determine otherwise.

Now we consider the principal issue of whether a teachers' collective bargaining agreement may contain an agency shop provision enforceable by the discharge of a non-complying employee.

■ Labor relations between school corporations and teachers are governed by the 1973 Certificated Educational Employee Bargaining Act (CEEBA), I.C. 20–7.5–1–1 *et seq.*[3]

The CEEBA has never been interpreted by a court undertaking to ascertain the

---

1. E. g., *National Labor Relations Board v. General Motors Corporation* (1963), 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670; *Washington v. Chrysler Corporation* (1964), 137 Ind.App. 482, 200 N.E.2d 883.

2. *Meade Electric Company v. Hagberg* (1959), 129 Ind.App. 631, 159 N.E.2d 408; 5 *Peebles*, Indiana Practice, Legal Business Forms, § 601, p. 504 (1967).

3. The Indiana General School Powers Act, I.C. 20–5–1–1—20–5–6–8, explicitly silences itself in matters covered by "the laws relating to employment, contracting, compensation and discharge of teachers." I.C. 20–5–2–2(7). When the legislature has made no other provision, the General School Powers Act does enable school corporations to conduct labor relations along reasonable lines. *East Chicago Teachers Union, Local No. 511, American Federation of Teachers v. Board of Trustees of the*

limits that act places on collective bargaining agreements. So we briefly review the applicable principles of statutory construction.

■ I.C. 1–1–4–1 (Burns 1980) provides that "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense. But technical words and phrases having a peculiar meaning in law shall be understood according to their technical import." I.C. 1–1–4–1(1) (Burns 1980); *Hazelett v. Blue Cross & Blue Shield of Indiana* (1980), Ind. App., 400 N.E.2d 1134; *State v. Bress*, (1976), 169 Ind.App. 397, 349 N.E.2d 229. Statutes are to be construed as a whole, *Hazelett, supra; In re Big Raccoon Conservancy District v. Kessler Farms Corp.* (1977), Ind.App., 363 N.E.2d 1004, giving effect to as much of the language of the statute as possible. *White v. White* (1975), 167 Ind.App. 459, 338 N.E.2d 749.

The first section of the CEEBA unmistakably limits the range of collective bargaining between teachers and school corporations:

The relationship between school corporation employers and certificated school employees is not comparable to the relationship between private employers and employees among others for the following reasons: (i) a public school corporation is

not operated for profit but to insure the citizens of the state rights guaranteed them by the Indiana state constitution; (ii) the obligation to educate children and the methods by which such education is effected will change rapidly with increasing technology, the needs of an advancing civilization and requirements for substantial educational innovation; (iii) the Indiana general assembly has delegated the discretion to carry out this changing and innovative educational function to the local governing bodies of school corporations, composed of citizens elected or appointed under applicable law, a delegation which these bodies may not and should not bargain away; and (iv) public school corporations have different obligations with respect to certificated school employees under constitutional and statutory requirements than private employers have to their employees.

I.C. 20‑7.5‑1‑1(d) (emphasis added.)

■ The scope of collective bargaining by schools, then, is to be restricted because school corporations have duties to the public, to the legislature, and to their employees as individuals, which they must not be permitted to bargain away. These strictures are made concrete in sections 3 through 6 of the Act.[4] Section 3 of the Act

*School City of East Chicago* (1972), 153 Ind. App. 463, 287 N.E.2d 891; *Gary Teachers Union, Local No. 4, American Federation of Teachers v. School City of Gary* (1972), 152 Ind.App. 591, 284 N.E.2d 108. But when the legislature has provided for teacher labor relations, the General School Powers Act falls silent. *Gary Teachers Union, Local No. 4, American Federation of Teachers v. School City of Gary* (1975), 165 Ind.App. 314, 332 N.E.2d 256. Neither the parties nor the amici argue that any statute other than the General School Powers Act, the CEEBA, and the Teacher Tenure Act is germane to this issue.

4. 20–7.5–1–3. Duty to bargain collectively and discuss—Prohibited contract provisions.—On and after January 1, 1974, school employers and school employees shall have the obligation and the right to bargain collectively the items set forth in section 4, the right and obligation to discuss any item set forth in section 5 and shall enter into a contract embodying any of the matters on which they have bargained collectively. No contract may include provisions in conflict with (a) any right or benefit established

by federal or state law, (b) school employee rights as defined in section 6(a) of this chapter, or (c) school employer rights as defined in section 6(b) of this chapter. It shall be unlawful for a school employer to enter into any agreement that would place such employer in a position of deficit financing as defined in this chapter, and any contract which provides for deficit financing shall be void to that extent and any individual teacher's contract executed in accordance with such contract shall be void to such extent.

20–7.5–1–4. Subjects of Bargaining.—A school employer shall bargain collectively with the exclusive representative on the following: salary, wages, hours, and salary and wage related fringe benefits. A contract may also contain a grievance procedure culminating in final and binding arbitration of unresolved grievances, but such binding arbitration shall have no power to amend, add to, subtract from or supplement provisions of the contract.

20–7.5–1–5. Subjects of discussion.—(a) A school employer shall discuss with the exclusive representative of certificated employees, and may but shall not be required to bargain

requires that school corporations and teachers bargain collectively on pay, pay-related fringe benefits, hours, and grievance procedures; and authorizes them, by mutual consent, to contract as to various methods relating to teaching as a profession. I.C. 20–7.5–1–3, –5. But the crucial portion of section 3 forbids the parties to agree to any provision in conflict with either the "rights" of the parties as outlined in section 6 of the Act, or the rights of any person under federal or state law.

■ An inspection of section 6 discloses that while section 3 protects the *rights* of school employees, school employers are protected not in their *rights*, but in their *responsibilities and authority.* I.C. 20–7.5–1–6. So the legislature has plainly expressed its intent that the responsibilities and authority of school corporations, as partially described in section 6(b) of the Act, are duties entrusted by the legislature to the sole discretion of school corporations, and can not be restricted in a collective bargaining agreement.

Among the duties of a school corporation listed in section 6(b) are those to "suspend or discharge its employees in accordance with applicable law," and to "relieve its employees from duties because of lack of work or other legitimate reason." I.C. 20–7.5–1–6(b)(4), (6). These duties are to remain in the hands of the school corporations "to the *full extent* authorized by law." I.C. 20–7.5–1–6(b).

■ The decision, then, of whether to retain or dismiss a teacher has been designated by the legislature as being the sole province of school corporations. School corporations are forbidden to encumber their discretion in this area, and in particular, they may not make collective bargaining agreements in which they undertake to fire an entire class of teachers.

■ Thus, sections 3(c) and 6(b) of the CEEBA plainly remove the firing of teachers from the scope of collective bargaining. The legislative intent found in section 1(d) takes on the substance of unambiguous command in sections 3 and 6.

The AFT and ISTA argue that because the Anderson schools "intend" to continue to employ teachers who refuse to pay the representation fee, and since the AFT intends to collect such fees by bringing suit against the offending teachers, and not by insisting that non-paying teachers be dismissed, the agency shop clause should be held valid as applied.

But this was not the issue that Alexander and her co-plaintiffs sought to resolve when they sought a declaratory judgment against the agency shop agreement. Their com-

collectively, negotiate or enter into a written contract concerning or be subject to or enter into impasse procedures on the following matters: working conditions, other than those provided in section 4; curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations: Provided, however, That any items included in the 1972–1973 agreements between any employer school corporation and the employee organization shall continue to be bargainable.

(b) Nothing shall prevent a superintendent or his designee from making recommendations to the school employer.

20–7.5–1–6. Rights of school employees and school employers.—(a) School employees shall have the right to form, join or assist employee organizations, to participate in collective bargaining with school employers through representatives of their own choosing and to engage in other activities, individually or in concert for the purpose of establishing, maintaining, or improving salaries, wages, hours, salary and wage related fringe benefits and other matters as defined in sections 4 and 5.

(b) School employers shall have the responsibility and authority to manage and direct in behalf of the public the operations and activities of the school corporation to the full extent authorized by law. Such responsibility and activity shall include but not be limited to the right of the school employer to:

(1) direct the work of its employees;

(2) establish policy;

(3) hire, promote, demote, transfer, assign and retain employees;

(4) suspend or discharge its employees in accordance with applicable law;

(5) maintain the efficiency of school operations;

(6) relieve its employees from duties because of lack of work or other legitimate reason;

(7) take actions necessary to carry out the mission of the public schools as provided by law.

plaint was not brought against any practice of the Anderson schools, but against a portion of the collective bargaining agreement between the Anderson schools and the AFT. The agency shop clause unquestionably *requires* that the Anderson schools discharge any teacher refusing to pay the AFT's representation fee. That is the essence of the agency shop agreement.

██ Because the improper provision for discharge is inextricable from—indeed is the essence of—the agency shop provision, the threat of discharge cannot be severed from the clause without rendering it meaningless. In such instances, the entire agency shop provision must fall. *National Labor Relations Board v. Broderick Wood Products Company* (10th Cir., 1958) 261 F.2d 548. In distinguishing that case from that of *National Labor Relations Board v. Rockaway News Supply Company* (1953), 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 in which the Supreme Court upheld the remainder of a collective bargaining agreement despite an unlawful union security clause, the U. S. Court of Appeals for the Tenth Circuit said:

> In this same connection, respondents insist that the illegal preferential hiring language contained in the union-security clause is severable from the rest of the contract and that as such it should be lifted out and separately condemned, leaving as valid the other union-security provisions and the action taken thereunder. To sustain this position, they assert that the preferential hiring clause was never utilized by either party and cite *N. L. R. B. v. Rockaway News Supply Co.,* 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832, as requiring severance under such circumstances.

> \*   \*   \*   \*   \*   \*

We deem *Rockaway News* to be clearly distinguishable from the instant case and, therefore, not controlling. Here, the Board found that the very "execution and maintaining" in effect of the illegal clause was itself an unfair labor practice. No such issue was presented by *Rockaway News.* The court did not purport to pass upon severability as a defense for

"executing and maintaining" an unlawful union-security clause. In that case, the discharge of the employee was in no way connected with or affected by the illegal security clause. Here, the union-security clause was the very basis for the charge of unfair labor practices. It was the union-security clause that Teamsters were enforcing when demanding that the employees be discharged. Moreover, in *Rockaway News*, the clause considered severable was a complete and separate portion of the contract. *Here, the preferential hiring provision which respondents insist must be severed from the contract is a sentence contained within the union-security clause itself. To lift out one portion of the union-security clause while at the same time giving effect to the remainder of the paragraph would be but to corrupt the purport of Rockaway News.*

261 F.2d at 555 -56. (emphasis added.)

Our conclusion that the entire agency shop provision must fail is not to be taken as a criticism of prior decisions as to the validity of union security agreements outside a school context. Nor do we suggest that such agreements between schools and teachers' unions are invalid *per se.* We say only that construing the provisions of the CEEBA *in toto*, they forbid school corporations to make *any* collective bargaining agreement—for union security purposes or otherwise—in which the schools undertake the mandatory discharge of a given class of teachers.

Therefore it was unlawful for the Anderson Community School Corporation to make a collective bargaining agreement mandating the dismissal of certain teachers. The trial court made no error in granting summary judgment.

Its decision is affirmed.

SULLIVAN, J., concurs in result.

SHIELDS, J., concurs.