**MICHIGAN CITY EDUCATION ASSOCIATION and Brian Vukadinovich, Appellants–Defendants,**

v.

**BOARD OF SCHOOL TRUSTEES OF THE MICHIGAN CITY AREA SCHOOLS, Appellee–Plaintiff.**

**No. 50A03–9008–CV–322.**

Court of Appeals of Indiana,
Third District.

Sept. 18, 1991.

Richard J. Darko, Mary Jane LaPointe, Lowe Gray Steele & Hoffman, Indianapolis, for appellants-defendants.

Marsha Schatz Volk, Edward L. Volk, Newby, Lewis, Kaminski & Jones, La Porte, for appellee-plaintiff.

GARRARD, Judge.

This appeal concerns the arbitrability of the immediate cancellation of a semi-permanent teacher's indefinite teaching contract.

Brian Vukadinovich (Vukadinovich) was employed, as a semi-permanent teacher, by the Michigan City Area Schools. On March 22, 1988, the Board of School Trustees of the Michigan City Area Schools (School Corporation) cancelled Vukadinovich's indefinite teaching contract. The School Corporation and Michigan City Education Association (Association) had entered into a collective bargaining agreement that was effective August 15, 1987. That agreement (Master Contract) provided for a grievance procedure that culminated in binding arbitration of unresolved grievances.

After exhausting the grievance procedure as outlined in the Master Contract, Vukadinovich sought an arbitration hearing. It was held on November 10, 1988.[1] The arbitrator's award, issued January 17, 1989, found in favor of Vukadinovich and ordered him reinstated with back pay and all benefits and rights.

Following the arbitrator's award, the School Corporation filed an action seeking to have the award vacated. The Association and Vukadinovich counterclaimed for confirmation of the award. The arbitrator's award was vacated by the trial court as a summary judgment in favor of the School Corporation. Vukadinovich and the Association appeal that judgment.

The deciding issue in this case can be stated as follows: Is teacher discharge a grievance that may be the subject of binding arbitration under a collective bargaining agreement between a school board and a teacher's association? We hold that it is not.[2]

---

1. The School Corporation participated in the arbitration hearing, though they reserved the position that the matter was not subject to an arbitrator's jurisdiction.

2. Our reading of the Master Contract does not convince this court that the contract allows teacher dismissal to be a subject of binding arbitration. Vukadinovich asserts that §§ .0807, .1701 and .1707 of the Master Contract, when read together, clearly demonstrate that teacher dismissals can be submitted to binding arbitration. § .0807 reads:

 No teacher shall be disciplined or reprimanded, reduced in rank or compensation without just cause. Any such discipline, reprimand, or reduction in rank or compensation, including adverse evaluation of teacher performance, asserted by the administration shall be in writing. All information forming the basis for disciplinary action will be made available to the teacher.

 § .1701 reads:

 A grievance is defined as a difference between the Administration and the Association or one or more teachers involving an alleged violation of the specific terms of this contract.

 and § .1707 reads:

 If the decision received from the above step is not acceptable to the Association, the Association may submit the grievance in writing to binding arbitration beginning January 1, 1985, under and in accordance with the rules of the American Arbitration Association within twenty-five (25) working days after receipt of the written decision from the superintendent, Board, or receipt of the waiver notice from the Board. A copy of the letter requesting such arbitration shall also be sent to the superintendent of schools. If a due process hearing has been requested or is in process, the grievant and the Association agree to extend the time limit required to submit the grievance to binding arbitration until the completion of the due process hearing.

 The two (2) parties, the superintendent and the Association, shall attempt to select an arbitrator or a method of selecting an arbitrator by mutual agreement. If the two (2) parties cannot agree on the arbitrator, the arbitrator shall be selected in accordance with the rules of the American Arbitration Association.

 The arbitrator shall have no power to add to, subtract from, disregard, alter or modify any of the terms of this contract.

## Discussion

■ "We are thus confronted with another aspect of the ongoing legal evolution of the rights and responsibilities that exist between public employees and public employers." *Gary Teachers Union, Loc. No. 4, A.F.T. v. School City of Gary* (1972), 152 Ind.App. 591, 284 N.E.2d 108, 110. The 1972 *Gary Teachers Union* case, *supra*, established that school boards may collectively bargain with teachers' representatives. These agreements may contain provisions that detail a grievance process that culminates in binding arbitration. *Id.*, 284 N.E.2d 108, 114; *see also* IC 20–7.5–1–4, Subjects of Bargaining.

There are limits placed upon collective bargaining in the public school teacher arena. What is, and what is not, a proper subject for binding arbitration has been variously litigated. For example, the case of *Sch. City of E. Chicago v. E. Chicago Fed.* (1981), Ind.App., 422 N.E.2d 656, upheld an arbitrator's award adverse to the school. This grievance concerned a dues deduction provision in the agreement. In contrast, the cases of *Tippecanoe Ed.*

The Board and the Association agree that neither party shall be permitted to assert in such arbitration proceeding any grounds or to rely on any evidence not previously disclosed to the other party.

The fees and expenses of the arbitrator shall be divided equally by the Board and the Association.

The contents of an evaluation may not be grieved except in dismissal cases, then only as evidence and not to change the contents or protest the validity.

Vukadinovich places particular emphasis upon the last sentence of § .1707 as establishing that dismissal cases are the proper subject of binding arbitration. With this we do not agree. We read that provision to address the contents of an evaluation and their grievability, not the grievability of dismissal cases. The "in dismissal cases" states *when* evaluation contents may be grieved.

Our posture on this matter is buttressed by § .0806, which reads:

The Board will follow the statutes of the State of Indiana regarding due process for non-permanent and semi-permanent teachers. Non-permanent and semi-permanent teachers will be granted the same procedure of due process regarding a hearing as that of a permanent teacher under present law.

In this section the Master Contract recognizes the existence of statutes in the State of Indiana

*Ass'n v. Bd. of School Trustees, etc.* (1981), Ind.App., 429 N.E.2d 967 and *Anderson Fed. of Teachers, etc. v. Alexander* (1981), Ind.App., 416 N.E.2d 1327, teach that the scope of binding arbitration is not unlimited.[3] The scope of collective bargaining is restricted because of school corporation duties to the public, the legislature and to the employees as individuals. These duties the school corporation "must not be permitted to bargain away." *Anderson Fed. of Teachers, etc. v. Alexander* (1981), Ind. App., 416 N.E.2d 1327, 1331.

The labor relationships between school corporations and teachers are governed by the Certificated Educational Employee Bargaining Act (CEEBA), IC 20–7.5–1–1 *et seq.* The CEEBA expresses undeniable limitations upon the scope of collective bargaining between these parties. Public policy considerations in the CEEBA prologue are explicit:

(d) The relationship between school corporation employers and certificated school employees is not comparable to the relation between private employers and employees among others for the fol-

that pertain to the due process afforded non-permanent and semi-permanent teachers. Reading Article .08, labeled Teachers Rights, no section specifically addresses dismissal. The statement "Discipline, reprimand, reduction in rank or compensation" in § .0807 does not equate with dismissal. Dismissal must be then found by implication in one of these sections. The implication is strongest in § .0806. Under this reading the teacher's rights in dismissal cases are addressed by the statutes of Indiana that address due process of non-permanent and semi-permanent teachers. Those would be in the Teacher Tenure Act, IC 20–6.1–4–1 *et seq.*

We do not rely upon contract interpretation to arrive at our holding in this case. The above discussion interprets the contract as consistent with our interpretation of statute and case law, upon which we do decide this case.

3. In the *Tippecanoe* case, the school board was held not to be able to delegate to an arbitrator the responsibility to determine whether a teacher's involuntary transfer was for the general welfare of the school corporation. The *Anderson* case found that the responsibility and authority for hiring and firing teachers was solely held by the school corporation and that collective bargaining could not restrict these duties.

lowing reasons: (i) a public school corporation is not operated for profit but to insure the citizens of the State rights guaranteed them by the Indiana State Constitution; (ii) the obligation to educate children and the methods by which such education is effected will change rapidly with increasing technology, the needs of an advancing civilization and requirements for substantial educational innovation; (iii) *the Indiana General Assembly has delegated the discretion to carry out this changing and innovative educational function to the local governing bodies of school corporations, composed of citizens elected or appointed under applicable law, a delegation which these bodies may not and should not bargain away;* and (iv) public school corporations have different obligations with respect to certificated school employees under constitutional and statutory requirements than private employers have to their employees.

IC 20–7.5–1–1(d) (emphasis added).

The *Anderson, supra,* court's analysis of the CEEBA culminated in a finding that the Act "plainly [removed] the firing of teachers from the scope of collective bargaining." 416 N.E.2d 1327, 1332. We find that court's approach convincing. Additionally, a pertinent section in the CEEBA reads in part:

No contract may include provisions in conflict with (a) any right or benefit established by federal or state law, (b) school employee rights as defined in Section 6(a) of this chapter, or (c) *school employer rights as defined in Section 6(b) of this chapter.* It shall be unlawful for a school employer to enter into any agreement that would place such employer in a position of deficit financing as defined in this chapter, and any contract which provides for deficit financing shall be void to that extent and any individual teacher's contract executed in accordance with such contract shall be void to such extent.

IC 20–7.5–1–3 (emphasis added). The crucial portion of § 3 is that no contract may include provisions in conflict with school

employer rights as defined in § 6(b) of this chapter. § 6(b) reads:

(b) *School employers shall have the responsibility and authority* to manage and direct in behalf of the public the operations and activities of the school corporation to the full extent authorized by law. *Such responsibility and activity shall include* but not be limited to the right of the school employer to:

(1) direct the work of its employees;

(2) establish policy;

(3) hire, promote, demote, transfer, assign and retain employees;

(4) *suspend or discharge its employees in accordance with applicable law;*

(5) maintain the efficiency of school operations;

(6) relieve its employees from duties because of lack of work or other legitimate reason;

(7) take action necessary to carry out the mission of the public schools as provided by law.

IC 20–7.5–1–6(b) (emphasis added).

We quote the *Anderson* case:

So the Legislature has plainly expressed its intent that the responsibilities and authority of school corporations, as partially described in section 6(b) of the Act, are duties entrusted by the Legislature to the sole discretion of school corporations, and can not be restricted in a collective bargaining agreement.

*Anderson Fed. of Teachers, etc. v. Alexander* (1981), Ind.App., 416 N.E.2d 1327, 1332.

In the case of *Tippecanoe Ed. Ass'n v. Bd. of School Trustees, etc.* the court followed the construction of the CEEBA as expressed in *Anderson.* In *Tippecanoe* the school board was prohibited from delegating to an arbitrator the authority to rule on a teacher transfer. *Tippecanoe Ed. Ass'n v. Bd. of School Trustees, Etc.* (1981), Ind.App., 429 N.E.2d 967, 973. *See also* IC 20–7.5–1–6(b)(3), *supra.* Several other jurisdictions are cited in *Tippecanoe* to support that ruling. 429 N.E.2d 967, 973–74.

 The board is free to adopt binding procedures and criteria that are relative to decisions such as the firing of teachers. It may also, via a collective bargaining contract, bind itself to the procedures and criteria. We hold that legislative intent bars the board from delegating to an arbitrator the authority to rule on teacher dismissal matters. Those matters are for the exclusive province of the school boards. This would be so in the instant case, even assuming *arguendo* that the Master Contract was clear on this point. *See* n. 2, *supra.*

Teacher dismissal by a school board cannot be done with impunity. We note that, in carrying out the school purposes, a public school governing body is granted many enumerated specific powers. IC 20–5–2–2. But,

> [T]he compensation, terms of employment and discharge of teachers shall, however, be subject to and governed by the laws relating to employment, contracting, compensation and discharge of teachers....

IC 20–5–2–2(7), Indiana General School Powers Act. The Teacher Tenure Act (TTA) is the legislation that provides recourse in the dismissal of teachers in Indiana. IC 20–6.1–4–1 *et seq.* The policy of TTA "is to establish a uniform tenure system for all the schools of the state and must be construed liberally with that aim and end in view." *School City of Lafayette v. Highley* (1938), 213 Ind. 369, 376, 377, 12 N.E.2d 927, 930. The manifestation of the legislative intent underlying the TTA is present in the qualifying provisions of the Indiana General School Powers Act, *supra,* IC 20–5–2–2(7), and in the CEEBA, *supra,* by excluding the subjects of employment and discharge of teachers from collective bargaining, and providing that the school governing bodies shall have responsibility and authority to hire and retain and to suspend and discharge teachers in accordance with applicable law. *Gary Teachers Union, Loc. No. 4, A.F.T. v. School City of Gary* (1975), 165 Ind.App. 314, 332 N.E.2d 256, 260, *see* n. 4; *see also Brown v. Bd. of School Trustees of the Nettle Creek Comm. Sch. Corp.* (1980), Ind.App., 398 N.E.2d 1359, 1361.

In applying our reading of the statutes and case law to the case at bar, we conclude that the discharge of teachers is not subject to arbitration through the teacher collective bargaining process.

The judgment of the trial court is affirmed.

HOFFMAN, and MILLER, P.JJ., concur.