STATE OF INDIANA *v.* FLORA L. BRESS ET AL.

[No. 2-374A57. Filed June 21, 1976.]

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellant.

*Robert A. Claycombe, Steven G. Cracraft, Kothe, Shotwell, Claycombe, Hendrickson & Kortepeter,* of Indianapolis, for appellees.

## CASE SUMMARY

BUCHANAN, P.J.—Appellant-State of Indiana (the State) appeals a judgment awarding damages for breach of a lease to Appellee-Bress *et al.* (Bress), claiming that the State was not bound by certain lease provisions and there was insufficient evidence to support the damages found by the trial court.

Affirmed.

## FACTS

The evidence most favorable to the trial court's judgment is as follows:

On January 23, 1959, the State leased from Kirshbaum Realty Company (Kirshbaum) the 9-story Sommers Building in downtown Indianapolis to serve as an office building and claims center for the Indiana Employment Security Division. This lease, executed by Kirshbaum and the Director of Public Works & Supply and approved by the Governor and the Attorney General, contained the following relevant provisions:

ARTICLE 2.—*Term of Lease:*

TO HAVE AND TO HOLD the said premises for and during a term of two (2) years, beginning on the fifteenth (15th) day of August, 1959, and ending on the fourteenth

(14th) day of August, 1961, unless further extended as hereinafter provided.

ARTICLE 5.—*Renewal Option:*

It is hereby agreed that Tenant shall have the privilege of leasing said premises, upon the same terms and conditions other than rent, for the further period of one (1) year, commencing on August 15, 1961, and ending on August 14, 1962, provided that the Tenant notifies the Landlord in writing of the exercise of such privilege at least six (6) months before August 14, 1961. * * *

ARTICLE 6.—*Alterations, Changes and Improvements:*

The Tenant is hereby permitted by the Landlord to make certain alterations, changes and improvements in the aforesaid premises at the sole cost and expense of Tenant, but subject to approval of the Landlord, which approval, however, shall not be unreasonably withheld, provided that such alterations, repairs, changes and improvements are in strict conformity with all the laws, rules and regulations of the City of Indianapolis, State of Indiana, or other governmental authority having jurisdiction; and the Tenant hereby agrees to guarantee and indemnify the Landlord against any mechanics' liens, liability or responsibility of every description whatsoever, by reason of any such alterations, repairs, changes, or improvements which it may make in and upon the demised premises. The Tenant further agrees that if it or the Landlord is required at any time by the City of Indianapolis, State of Indiana, or any other governmental authority having jurisdiction, to make any changes, additions, alterations or repairs to said premises, whether the same are interior or exterior, or in the nature of capital additions or replacements, or ordinary maintenance or structural, or of any other character, said Tenant will promptly do so at its sole cost and expense, it being expressly understood that the Landlord is leasing said premises to the Tenant in the condition in which they now are, and that the Landlord shall not be required under any circumstances to make any alterations, repairs, changes, rebuilding, or improvements of any kind whatsoever, except to the roof and exterior walls, and that all such will be performed by the Tenant at its sole cost and expense. "Exterior walls", as hereinabove used, is not intended to include window glass and structural members (vertical and horizontal mullions, heads, jambs and sills), the necessary replacement, repair and maintenance of which will be

performed by the Tenant, likewise at its sole cost and expense.

ARTICLE 8.—*Good Condition and Repair:*

The Tenant shall keep the entire premises, both interior and exterior, (including the elevators, fixtures, plumbing, heating, utilities and appurtenances, but excepting the roof and exterior walls [as defined in Article 6, above]), in good condition and repair, at its sole cost and expense, and shall keep the same in good, orderly and sanitary condition.

ARTICLE 10.—*Surrender of Possession, etc.:*

The Tenant agrees to pay the rent at the times and in the manner aforesaid, and at the expiration of the term, or any extension thereof, will peacefully yield up to the Landlord the premises demised hereunder in as good order and repair as when delivered to it, damage by fire, casualty, ordinary wear and tear, and damage by the elements excepted. The tenant covenants that no waste or damage will be committed upon or to the demised premises; that the premises shall be used for the purposes hereinabove stated, and shall not be used or permitted to be used for any other purposes; and that said premises shall not be used for any unlawful purpose, and no violation of law or ordinance shall be committed thereon.

ARTICLE 15.—*Attorneys' Fees and Court Costs:*

In the event any litigation hereafter should arise between the parties out of the terms and conditions of this Lease, the successful party shall be entitled to reasonable attorneys' fees and court costs from the unsuccessful party.

ARTICLE 16.—*Plate and Window Glass:*

The Tenant shall repair or replace any plate and/or window glass which may be injured or destroyed during the term of this Lease, or extension thereof, and shall carry insurance to cover the plate glass.

ARTICLE 17.—*Responsibility for Roof and Exterior Walls:*

The Landlord shall only be responsible for ordinary maintenance of the roof and exterior walls (as originally defined in Article 6 hereof) or for the replacement thereof, if necessary; all other alterations, changes, improvements, and repairs of said premises, of every character whatsoever, as hereinabove provided for, shall be the obligation of the Tenant and shall be made by and at said Tenant's own expense.

ARTICLE 23.—*Holding Over:*

In the event the Tenant shall remain in the demised premises after the expiration of the term or any renewal thereof without having executed a new written lease with the Landlord, such holding over shall not constitute a renewal or extension of this Lease. The Landlord, at its option, may elect to treat the Tenant as one who has not removed at the end of its term, and thereupon be entitled to all remedies against the Tenant provided by law in that situation; or the Landlord may elect, at its option, to construe such holding over as a tenancy from month to month, subject to all the terms and conditions of this Lease.

ARTICLE 25.—*Obligations of Successors, etc.:*

The Landlord and the Tenant agree that all the provisions hereof are to be construed as covenants and agreements, as though the words importing such covenants and agreements were used in each separate paragraph hereof; and further agree that all of the provisions hereof shall bind and inure to the benefit of the parties hereto and their respective successors and assigns and others claiming under them or any of them.

(hereinafter referred to as the lease). ·

Kirshbaum then conveyed the Sommers Building (subject to the lease) to Bress on January 26, 1959.

When the 2-year term of the lease expired on August 14, 1961, the State did not exercise its option for an additional year term, under Article 5. Instead, the parties agreed to continue the present lease arrangement on a month-to-month basis . . . which ran until the State vacated the Sommers Building in June of 1970.

The terms and conditions of this new tenancy were to be the same as in the original lease, as evidenced by the letters of a Deputy Attorney General on August 11, 1961, and August 23, 1961, to one of the Appellees.

On August 21, 1969, the City of Indianapolis issued a Condemnation-Repair Order for the Sommers Building requiring the structure to be removed or repaired.

After the State's vacation of the Sommers Building in June of 1970, Bress was of the opinion that the State had breached

its covenant of maintenance and had committed waste. He was unable to negotiate a satisfactory solution with either the Indiana Employment Security Division or the Attorney General's Office.

Bress then filed suit on June 30, 1971, in the Marion County Superior Court, claiming the State had breached Articles 6, 8, and 10 of the lease.

On October 4, 1973, the trial court made special Findings of Fact and Conclusions of Law, finding the State was bound by the provisions of the lease. It then entered a judgment in favor of Bress for $97,849 plus $4,480 in attorney's fees.

## ISSUES

ISSUE ONE—Is the State not bound by the lease because it is for a term longer than four years in violation of Indiana Code section 4-13-2-5(4)?

ISSUE TWO—If the State is bound by the lease is there sufficient evidence to support the damages awarded for breach thereof?

PARTIES' CONTENTIONS—State contends that it had no obligation other than to pay rent as the original lease expired and the new month-to-month arrangement, under the same terms as the original lease as approved by the Deputy Attorney General, was a holding over which when added to the original term violated the four year limitation of Indiana Code Section 4-13-2-5(4) . . . any approval by the Deputy Attorney General being an ultra vires act. State further argues that the award of attorney's fees was therefore improper, but if it had any obligations under the lease, the award of damages is unsupported by the evidence.

Bress counters that the State was bound to properly maintain the premises by reason of Article 23 in the lease, the subsequent argrement made by the Deputy Attorney General, Indiana common law, or estoppel. He further enumerates

items of evidence he believes sufficient to sustain the award of damages.

## DECISION

ISSUE ONE—CONCLUSION—It is our opinion that the State was bound to honor the provisions of the lease during its entire tenancy of the Sommers Building, because the lease did not violate Indiana Code section 4-13-2-5(4).

As this appeal emanates from a bench trial in which the court made special Findings of Fact and Conclusions of Law, our standard of review is governed by Indiana Rules of Procedure, Trial Rule 52(A):

> On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, *the court on appeal shall not set aside the findings or judgment unless clearly erroneous,* and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. (emphasis added).

According to the drafters of this rule, "clearly erroneous" means:

> [A] finding upon an issue in favor of a party with the burden of proof will be reversed if there is no reasonable evidence to support it. . . .
>
> 3 *W. Harvey, Indiana Practice, Rule 52, Civil Code Study Commission Comments,* at 423 (hereinafter cited as *Harvey*).

The State . . . challenges the findings and judgment as erroneous because the lease as extended violates Indiana Code section 4-13-2-5(4) limiting the term of leases entered into by the State to four years:

> Subject to other applicable provisions of this Act [4-13-2-1—4-13-2-29] and to other laws not inconsistent herewith, the director of public works and supply [department of administration] shall have the following powers and duties respecting all agencies for the state except as herein otherwise provided:
>
> * * *
>
> (4) To rent land and other premises, with the approval of the governor, when necessary for the state purposes, *pro-*

*vided that no such land or premises shall be rented for a term exceeding four [4] years at a time.*
Ind. Code § 4-13-2-5 (4) (1976)
(emphasis added) (hereinafter, the Statute).

In interpreting this statute, we are cognizant of the usual rules of statutory construction.

First, the legislature directs us to take "[w]ords and phrases . . . in their plain, or ordinary and usual, sense. . . ." Ind. Code § 1-1-4-1 (1976).

The State recognizes that when a statute contains a "clear, unambiguous" statement, there is no "necessity for the application of rules of construction other than the rule that *'words and phrases shall be taken in their plain, or ordinary and usual sense.'*" [1937] *Ops. Att'y. Gen. Ind.* 175, 176. *See also, e.g.,*

[1973] *Ops. Att'y. Gen. Ind.* No. 9, at 34;

[1972] *Ops. Att'y. Gen. Ind.* No. 17, at 50;

[1971] *Ops. Att'y. Gen. Ind.* No. 3, at 5.

The language in the Statute that "no land or premises shall be rented for a term exceeding four [4] years at a time" expresses an unmistakable intent that the State be prevented from entering any long term lease arrangements.

The original lease provided for a 2 year term with an option to renew for an additional year, followed by a provision for a month-to-month tenancy subject to all the lease provisions in the event of holding over by the State.

The Statute prohibits a lease for a term of more than four years; the lease in question provides that a holding over shall neither extend nor renew the lease and allows the landlord to treat the tenancy on a month-to-month basis, but otherwise subject to the terms of the lease. The term beyond a possible three year period terminated. There was no continuance of the term of the lease thereafter.

Thus the four year maximum term could never be reached. Indiana is recognized as one of the states which defines a

month-to-month tenancy as "not a continuous tenancy, but one for recurring monthly periods, which ends and recommences at the expiration of every month." 51C C.J.S. *Landlord & Tenant* § 145, at 438 (1968), *citing, Weiss* v. *City of South Bend* (1947), 118 Ind.App. 105, 74 N.E.2d 925. The State as a hold-over tenant was never inexorably bound beyond a thirty day period.

The hold-over tenancy under the lease has the same legal effect as if the State had originally entered into a month-to-month tenancy with the same rights and obligations. The mere fact that a series of monthly tenancies could extend beyond a four year period is not synonymous with a term in excess of four years prohibited by the Statute. The Statute was only designed to prevent the State from being a party to long term lease in excess of four years.

The State itself has recognized the validity of such arrangements. In suggesting an alternative to a long term lease desired by the lessor—but prohibited by this same statute—the Attorney General proposed:

> Execute a lease for a period of four (4) years with an irrevocable provision that the same could be renewed successively at the option of the State. [1949] *Ops. Att'y. Gen. Ind.* No. 7, at 33, 34.

As the rights and duties of the parties are governed by the original lease as to a hold-over tenancy through Article 23 which specifically incorporates the original lease's provisions into the new hold-over tenancy, we cannot conclude that the trial court's finding that Articles 6, 8, and 10 were applicable to define the obligations of State was clearly erroneous.[1]

ISSUE TWO—CONCLUSION—There was sufficient evidence to support the damages awarded for breach of the lease.

There is not an absence of reasonable evidence to sup-

---

1. This conclusion obviates the necessity of considering whether the subsequent agreements executed for the State by the Deputy Attorney General were ultra vires and therefore invalid.

port the trial court's finding and conclusion as to the amount of damages suffered by Bress. *Harvey, supra.*

Connie Bershoff, president of Jack G. Messmer Construction Company, gave detailed testimony and provided an itemized report that it would require over $100,000 to put the Sommers Building back in proper repair. His report was based on an inspection in October of 1970; however, Attorney Richard Lyon had inspected the premises in April of 1970 and verified the conditions as found by Bershoff in October.

The State contests certain individual estimates in Bershoff's report—the same disputes covered by the State in cross-examination of Bershoff. The trial court has weighed the evidence in light of these disputed contentions, and we cannot say its finding was clearly erroneous within the meaning of TR. 52(A).[2]

The judgment below must therefore be affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 349 N.E.2d 229.

---

2. State additionally contended that the proper measure of damages for a breach of lease in this case would be the reduction in value of the structure. Using this approach, the trial court had available and could have believed the testimony of an appraiser, Bloor Redding, that the Sommers Building had been diminished in value by over $108,000; therefore, any error as to the measure of damages was harmless. TR. 61.

This decision affirming the State's liability under the original lease also moots the State's challenge to the award of attorney's fees as improper as there was no liability under the lease. The lease was valid in defining the duties of the parties, and the State has not argued that Article 15 is otherwise inapplicable.