Robert WHIPPLE and Nancy Whipple, Defendants-Appellants,

v.

Kenton L. DICKEY, Howard W. Rodenbeck, U. Keith Stone, and George L. Treece, Plaintiffs-Appellees.

No. 3-878A203.

Court of Appeals of Indiana, Third District.

March 27, 1980.

---

T. Dean Swihart, Kear & Swihart, Fort Wayne, for defendants-appellants.

Robert J. Hepler, Hoffman, Moppert & Solomon, Goshen, for plaintiffs-appellees.

GARRARD, Presiding Judge.

On May 4, 1977, plaintiffs filed suit against Robert and Nancy Whipple, husband and wife. They alleged that they were guarantors of a note executed by the Whipples on July 15, 1971 in favor of the Genesee Merchants Bank & Trust Company. It was claimed that the Whipples had failed to pay the note when due and that as guarantors, the plaintiffs were required to pay the bank the unpaid balance. In this action, the plaintiffs sought reimbursement from the Whipples in the amount of $5,074.16 plus interest. Ultimately, the trial court granted plaintiffs' motion for summary judgment. After denial of their motion to correct errors, the Whipples timely perfected an appeal to this court.

The Whipples admitted in their answer that they had executed the note, that they had defaulted, and that the plaintiffs had paid the bank the sum due. However, it is their contention that the trial court erred in entering summary judgment against them because there existed genuine issues of material facts as to (1) whether the plaintiffs were guilty of laches in bringing suit; (2) whether the plaintiffs' claim was barred by principles of res judicata or collateral estop-

pel; (3) whether Nancy Whipple was privy to a prior action which served as the basis for the Whipples' res judicata defense; and (4) whether plaintiffs were precluded from proceeding in this case because their claim should have been asserted as a compulsory counterclaim in a previous suit.

■ Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and testimony, disclose that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *Union State Bank v. Williams* (1976), Ind.App., 348 N.E.2d 683; Indiana Rules of Procedure, Trial Rule 56(C). If the moving party files affidavits and other materials establishing the lack of any genuine issue of material fact, the opposing party may not rest upon his pleadings but must come forth with specific facts showing that there is a genuine issue for trial. *Letson v. Lowmaster* (1976), Ind.App., 341 N.E.2d 785; Indiana Rules of Procedure, Trial Rule 56(E). Here, the movants demonstrated by the pleadings and by the affidavit of Howard Rodenbeck, one of the plaintiffs, that the Whipples defaulted on the note and that as guarantors, the plaintiffs made payment to the bank for the amount due. Thus, it was incumbent upon the Whipples to affirmatively show why the plaintiffs should be precluded from summary relief.

■ Whipples' first allegation of error is that there exists a genuine issue of material fact as to whether the plaintiffs should be barred by laches. The Indiana courts have long recognized that laches implies something more than a mere lapse of time and instead requires some actual or presumable change of circumstances, rendering it

inequitable to grant relief. *Wischmeyer v. Finch* (1952), 231 Ind. 282, 107 N.E.2d 661; *Piel v. DeWitt* (1976), Ind.App., 351 N.E.2d 48. The Whipples failed to show anything more than the fact that almost two years had elapsed between the plaintiffs' payment of the note on May 5, 1975 and their filing of suit on May 4, 1977. This period of time was not in excess of the applicable statute of limitations,[1] and the Whipples have not explained why it would be inequitable to permit plaintiffs to be reimbursed. There was no error here.

The Whipples next contend that the trial court erred because there is a genuine issue of material fact as to whether the plaintiffs are prevented from bringing their action by principals of res judicata or collateral estoppel. In the trial court, the Whipples relied primarily on two pieces of evidence in support of their contention.

First, they submitted a partial transcript from the trial of a suit brought by Robert Whipple on October 26, 1973 in the Allen Superior Court against the same four parties who are plaintiffs in the present action. There, Robert claimed that the defendants had breached an oral contract of employment in that they failed to transfer to him, as promised, 20% of Flint-Foods, Inc. stock as part of his compensation. The defendants were officers, directors, and shareholders of Flint-Foods, Inc. Counts of misrepresentation and violation of the Indiana securities law were also joined. Robert sought $59,190 in compensatory damages. The jury returned a verdict for him on August 9, 1977 in the amount of $9,041.69.

The partial transcript reveals the direct testimony of Kenton Dickey, one of the then defendants (plaintiff here), by his attorney, John Hoffman. Dickey was asked if he had gone to the Genesee bank to

---

1. IC 34–1–2–1 (1976). We are assuming, without deciding, that the laches defense is available to the Whipples in this cause of action. Although there are some cases to the contrary, *Villiger v. City of Henry* (1977), 47 Ill.App.3d 565, 5 Ill.Dec. 807, 362 N.E.2d 120; *McDaniel v. Messerschmidt* (1963), 191 Kan. 461, 382 P.2d 304, the majority rule remains that laches, being a purely equitable doctrine, is peculiar to courts of equity and does not apply to actions at law. *First Citizens' National Bank v. MacAllister* (1977), 117 N.H. 277, 371 A.2d 1175; *Larrance Tank Corp. v. H. R. Burrough* (Okl.1970), 476 P.2d 346; *Jonklaas v. Silverman* (1977), 117 R.I. 691, 370 A.2d 1277. See generally *Citizens National Bank v. Harvey* (1976), 167 Ind.App. 582, 339 N.E.2d 604. In the case at bar, the plaintiffs' suit is a strict action at law, and no equitable remedy is sought.

inspect the records of the Flint-Foods file and whether he had discovered any guarantees executed on behalf of the corporation. Dickey responded in the affirmative and testified as to the substance of two guarantees which were executed by the defendants and others for a bank loan to the corporation. Dickey then stated that the third, and last, guarantee had been signed by the defendants to secure a personal loan to the Whipples for the purchase of a house. He said that he and the other defendants had been required to pay the balance of the note and that they had never been repaid. All three guarantees were introduced into evidence and examined by the jury. In response to this exhibit, the plaintiffs in the case at bar submitted an affidavit by John Hoffman. He stated that the purpose of Dickey's statements was to rebut Robert Whipple's earlier testimony in which he had claimed that he had executed a guarantee for the benefit of the corporation. Hoffman said that at that time, the execution of such a guarantee appeared to be crucial to Robert's establishment of a right to Flint-Foods stock.

The second item submitted by the Whipples to the trial court in the current action was a partial transcript of Hoffman's closing argument to the jury in the prior case. Only a few sentences are contained in this transcript in which Hoffman makes the statement, "[A]nd incidentally they paid off Five Thousand Dollars for Whipple to get a house that he has never paid back . . ."

The principles of res judicata were explained in detail in the decision of *Town of Flora v. Indiana Service Corp.* (1944), 222 Ind. 253, 53 N.E.2d 161:

"There are two well defined branches of the rule of res judicata. The subject has often been confused by the loose use of descriptive terms. One branch of the subject deals with prior adjudication as a bar. Under it a cause of action finally determined between the parties on the merits by a court of competent jurisdiction, cannot again be litigated by new proceedings before the same or any other tribunal, except by way of review according to law. Such a judgment or decree so rendered is a complete bar to any subsequent action on the same claim or cause of action between the same parties, or those in privity with them. Every question which was within the issues, and which, under the issues, might have been proved, will be presumed to have been proved and adjudicated. *Jordan v. Sisson,* 1924, 82 Ind.App. 128, 141 N.E. 881. This rule is perhaps best described as 'estoppel by judgment.'

The other branch of the subject applies where the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the former adjudication of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the latter suit, regardless of the identity of the causes of action, or the lack of it, in the two suits. When the second action between the same parties is on a different cause of action, claim, or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question *actually litigated and determined,* and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question *actually litigated and determined* in the original action. This branch of the subject may appropriately be described as 'estoppel by verdict or finding.' *See Charles E. Harding Co. v. Harding,* 1933, 352 Ill. 417, 186 N.E. 152, 88 A.L.R. 563 (Annotation on p. 574)."

*Id.* at 256–57, 53 N.E.2d at 163 (emphasis added). In referring to these two branches of res judicata, Judge Buchanan, in *Indiana State Highway Commission v. Speidel* (1979), Ind.App., 392 N.E.2d 1172, used the modern terminology of "claim preclusion" and "issue preclusion" or collateral estoppel, respectively. The two suits which are the subject of our present inquiry involve dif-

ferent causes of action. Therefore, we address the second aspect of res judicata and whether the issue of the Whipples' default on the note and payment by the guarantors was actually litigated and determined in the prior action.

■ The plaintiffs explained the reason for Dickey's testimony. The Whipples did not contest that explanation except by stating that it was "completely irrelevant to any matters now before the Court." Such a challenge is insufficient. More significantly the plaintiffs submitted to the trial court the complaint, answer, and pre-trial order filed in the first suit. In delineating the issues for trial, these documents made no reference whatsoever to the Whipples' default and subsequent payment by the guarantors. The statement made by Hoffman in his closing argument may or may not have been objectionable. However, the fact that the Whipples' default and the question of the guaranty were not actually litigated and presented to the jury for adjudication is demonstrated by the trial court's preliminary and final instructions, which were offered by the plaintiffs in support of their motion for summary judgment. In none of these instructions was the jury informed of a possible set-off by the defendants in case liability was found. Instead, the jury was simply instructed that if they did determine that defendants breached the contract, the measure of damages would be the actual value of ⅕ of the stock in Flint-Foods at the time of the breach. In addition, they were told what factors they could take into consideration in assessing the value of stock in a closely held corporation.

Accordingly, we hold that the Whipples failed to meet their "heavy burden" as explained in *Illinois Central Gulf Railroad v. Parks* (1979), Ind.App., 390 N.E.2d 1078, 1081:

"[W]here a judgment may have been based upon either or any of two or more distinct facts, a party desiring to plead the judgment as an estoppel by verdict or finding upon the particular fact involved in a subsequent suit must show that it went upon that fact, or else the question

will be open to a new contention. The estoppel of a judgment is only presumptively conclusive, when it appears that the judgment could not have been rendered without deciding the particular matter brought in question. It is necessary to look to the complete record to ascertain what was the question in issue."

*Accord, Linville v. Chenoweth* (1949), 119 Ind.App. 515, 84 N.E.2d 473. In awarding $50,000 less than Robert requested, the jury may have determined the stock's value to be that much lower than his own assessment. On the other hand, the jury may have found that Robert was not entitled to the stock interest at all but that on a quantum meruit basis, he should receive some additional compensation in light of the services he performed. Thus, the Whipples have not demonstrated that the judgment could not have been rendered without deciding the particular matter here in question. Because of our disposition of this issue, we need not decide whether Nancy Whipple was privy to the previous suit so as to be able to assert the res judicata defense.

■ For their last allegation of error, the Whipples contend that there is a genuine issue of material fact as to whether the plaintiffs should be barred from bringing the current suit because their claim should have been asserted as a compulsory counterclaim in the prior action. *Middlekamp v. Hanewich* (1977), Ind.App., 364 N.E.2d 1024. In order for a counterclaim to be considered compulsory, it must first arise out of the transaction or occurrence that is the subject matter of the opposing party's claim. Indiana Rules of Procedure, Trial Rule 13(A). Because the employment contract involved in the first case was oral and because judgment below was rendered on a summary basis, we are unable to determine from the record whether the complaint here arose out of the same transaction or occurrence as the subject matter of Robert's breach of contract suit. However, even if it did, we agree with the plaintiffs' contention that it was not mandatory that it be pleaded in the first suit.

Trial Rule 13(A) initially reads, "A pleading shall state as a counterclaim any claim *which at the time of serving the pleading the pleader has against any opposing party,* . . ." (emphasis added). Trial Rule 13(E) makes provision for those claims which accrue after the defendant's pleading, "A claim which either matured or was acquired by the pleader after serving his pleading *may,* with the permission of the court, be presented as a counterclaim by supplemental pleading." (emphasis added). Our trial rules thus provide that if a counterclaim matures after the defendant serves his responsive pleading, it will be a permissive one which may be filed with leave of court. *Hunter v. Milhous* (1973), 159 Ind. App. 105, 305 N.E.2d 448; 2 W. Harvey, Indiana Practice, Rules of Procedure Annotated (1970), (Civil Code Study Commission Comments).

Robert Whipple's action for breach of contract was initiated on October 26, 1973. The guarantors did not pay the note until May 5, 1975 which was subsequent to the filing of their answer to Robert's complaint. These guarantors had no cause of action against the Whipples until this payment was made. *Merchants National Bank & Trust Co. v. Winston* (1959), 129 Ind.App. 588, 159 N.E.2d 296. At that time, they then had a claim against the Whipples on an implied promise of indemnity. *Id.* Since the claim of the plaintiffs-guarantors did not mature or accrue until after the responsive pleading, it was not compulsory.

Judgment affirmed.

STATON and HOFFMAN, JJ., concur.