WARRICK HOSPITAL, INC., Syed Ali, Jorge Quiros, and Santi Vibul, Defendants-Appellants,

v.

Mary E. WALLACE, Individually and As Administratrix of the Estate of Clarence A. Wallace, Plaintiffs-Appellees.

No. 1–981A288.

Court of Appeals of Indiana, First District.

May 17, 1982.

Rehearing Denied June 29, 1982.

James V. Donadio, Margaret C. A. Young, Ice, Miller, Donadio & Ryan, Indianapolis, for defendant-appellant Warrick Hospital, Inc.

Michael McCray, Clark, Statham, McCray, Clark & Thomas, Evansville, for defendant-appellant Santi Vibul, M.D.

Joe Tipton, Edna M. Koch, William T. Rosenbaum, Dillon, Hardamon & Cohen, Indianapolis, for defendant-appellant Jorge Quiros, M.D.

Thomas H. Bryan, Fine, Hatfield, Sparrenberger & Fine, Evansville, for defendant-appellant Syed Ali, M.D.

Gerald G. Fuchs, David K. Robinson, Richard L. Schultheis, Indianapolis, for defendants-appellees.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Warrick Hospital, Inc. (Hospital), Syed Ali, Jorge Quiros, and Santi Vibul bring an interlocutory appeal challenging the denial of their motions for summary judgment in an action for wrongful death and loss of consortium based upon alleged medical malpractice.

We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

Clarence Wallace was admitted to the Hospital on April 11, 1978, and was treated there until he died on April 23, 1978, allegedly as the result of the medical malpractice of the Hospital and treating physicians. Mary E. Wallace, his widow, filed this action for wrongful death and loss of consortium on April 14, 1980, purportedly both individually and as administratrix of Clarence's estate. However, Mary did not apply for appointment as administratrix, and was not so appointed, until April 21, 1981.

Separate motions for summary judgment were filed by the Hospital and the physicians asserting (1) that Wallace did not comply with the provisions of the Wrongful Death Act, Ind.Code 34–1–1–2, and (2) that she failed to demonstrate the existence of a material issue of fact concerning the standard of care received by her husband. The trial court denied these motions for summary judgment and this appeal follows.[1] Additional facts necessary to our decision are stated in our discussion of the issues.

## ISSUES

We have renumbered and restated the issues presented for our review in the interest of clarity.

1. Does the Medical Malpractice Act create a cause of action for wrongful death separate and distinct from that created by the Wrongful Death Act?

2. Was Mary E. Wallace's failure to be appointed personal representative of Clarence Wallace's estate within two years of his death fatal to her wrongful death action?

3. Did Mary E. Wallace individually have a cause of action for wrongful death of Clarence based upon medical malpractice?

4. Did the trial court err in denying defendants' motions for summary judgment as to the loss of consortium claim because of lack of a genuine issue as to standard of care?

## DISCUSSION AND DECISION

*Issues One, Two, and Three*

The underlying question with regard to these three issues is whether or not a plaintiff in a wrongful death action based upon alleged medical malpractice must, nevertheless, satisfy the conditions precedent imposed by the Indiana wrongful death statute, or if the Medical Malpractice Act gives rise to an action for death caused by medical malpractice independent of the Wrongful Death Act. Therefore, we will discuss these issues together.

■ The right to maintain an action for wrongful death did not exist at common law. *General Motors Corp. v. Arnett*, (1981) Ind.App., 418 N.E.2d 546, *trans. denied; White, Admx. v. Allman*, (1952) 122 Ind.App. 208, 103 N.E.2d 901. The right to bring such an action is purely statutory. *Id.* The wrongful death statute abrogated the common law, and its purpose was to create a cause of action whereby the decedent's dependent next of kin may be compensated for the loss sustained by reason of such death. *Fisk v. United States*, (7th Cir. 1981) 657 F.2d 167 (Indiana law). The stat-

---

1. There is no contention that Wallace failed to comply with the terms of the Medical Malpractice Act, Ind.Code 16–9.5–1–1 *et seq.*; con-
sequently, we presume she did follow the provisions of that act.

ute created a new and independent cause of action for wrongful death. *Id.*

Indiana Code 34–1–1–2 provides: "When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the *personal representative* of the decedent within two (2) years . . . ." (Emphasis added.) It is clear that the personal representative is the only one who can prosecute an action pursuant to the wrongful death statute. *General Motors Corp. v. Arnett, supra; White, Admx. v. Allman, supra.* Here, Clarence Wallace died on April 23, 1978, allegedly the result of defendants' malpractice. Mary E. Wallace, his widow, filed this action for wrongful death on April 14, 1980, purportedly both individually and as administratrix of Clarence's estate. However, Mary did not apply for appointment as administratrix, and was not so appointed, until April 21, 1981, two days short of three years after Clarence's death. This is analogous to the factual situation which existed in *General Motors Corp. v. Arnett, supra.* In *Arnett,* the decedent died on January 28, 1978. His wife filed a wrongful death action on January 28, 1979, but she was not appointed as the personal representative of his estate until May 27, 1980, four months after the statutory period had expired. Judge Sullivan, writing for this court, after reciting the well settled rule that only a personal representative can bring a statutory action for wrongful death, stated:

"It was a condition precedent that the action against G.M. be brought by someone in the capacity of the personal representative. Mrs. Arnett failed to meet that condition, because she did not have that capacity within two years of her husband's death. She lost her statutorily conferred right to bring a wrongful death action under I.C. 34–1–1–2 and thus cannot maintain her action against G.M." 418 N.E.2d at 548.

The *Arnett* case further rejected the claim that Mrs. Arnett's appointment as personal representative could relate back to the time of filing suit because of the Indiana view that the two year period within which a wrongful death action may be commenced is not a statute of limitation, but rather is a condition precedent which the plaintiff must meet. *Bocek v. Inter-Insurance Exchange of Chicago Motor Club,* (1977) Ind.App., 369 N.E.2d 1093. It is, therefore, crystal clear that unless this present action for wrongful death is outside the purview of IC 34–1–1–2, and not governed by *General Motors Corp. v. Arnett, supra,* defendants' motion for summary judgment should have been granted as to the wrongful death claim.

The dissent seeks to distinguish *Arnett* on the ground it does not involve medical malpractice, arguing that the Indiana Medical Malpractice Act (Ind.Code 16–9.5–1–1 *et seq.*) created a new cause of action for wrongful death independent of IC 34–1–1–2, where the alleged cause is medical malpractice and that the definition of the term "representative" in IC 16–9.5–1–1(f) granted the wife a right to bring such an action without having been duly appointed as personal representative within the two year period. Wallace argues that the provision in the Medical Malpractice Act tolling the running of the statute of limitations during the pendency of the proceedings before the medical review panel[2] operates to

2. IC 16–9.5–9–1 (Supp.1981) provides in part:
"The filing of a proposed complaint tolls the applicable statute of limitations to and including a period of ninety (90) days following the receipt of the opinion of the medical review panel by the claimant. A proposed complaint under this chapter shall be deemed filed when a copy of the proposed complaint is delivered or mailed by registered or certified mail to the commissioner, who shall within ten (10) days after receipt forward by registered or certified mail a copy to each health care provider named as a defendant at his last and usual place of residence or his office.
Not earlier than twenty (20) days after the filing of a proposed complaint either party may request the formation of a medical review panel by serving a request by registered or certified mail upon all parties and the commissioner."
IC 16–9.5–9–2 provides:
"No action against a health care provider may be commenced in any court of this state

extend the time for appointment of a personal representative. We do not agree with either of these positions.

The wrongful death statute was enacted to provide a remedy which did not exist at common law, that is, a cause of action for damages for death caused by the wrongful act of another. On the other hand, the Indiana Medical Malpractice Act was enacted to meet the problems of the rapidly escalating cost to physicians of malpractice insurance, the near unavailability of such coverage to physicians engaged in certain high risk specialties, and because "[h]ealth care providers had become fearful of the exposure to malpractice claims and at the same time were unable to obtain adequate malpractice insurance at reasonable prices." *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., 404 N.E.2d 585, 589–90. The legislature thus responded to the vital needs of the community to preserve the availability of health care services to the citizens of this state. *Id.* The obvious purpose of the Medical Malpractice Act is to provide some measure of protection to health care providers from malpractice claims, thus to preserve the availability of such professional health care services to the community. *Sue Yee Lee v. Lafayette Home Hospital, Inc.*, (1980) Ind.App., 410 N.E.2d 1319, *trans. denied.*

We do not believe that the Medical Malpractice Act (IC 16–9.5–1–1 *et seq.*) created any separate cause of action for wrongful death or that the legislature intended to do so. The obvious purpose of the act was to protect health care providers from malpractice claims, *Sue Yee Lee v. Lafayette Home Hospital, Inc.*, *supra*, not to create new and additional causes of action. Were it to create a separate cause of action it would increase the incidence of such claims rather than protect against them.

The language which the dissent finds to give birth to a cause of action independent of the wrongful death statute simply states

that "a patient or his representative having a claim under this article for bodily injury or death on account of malpractice may file a complaint . . . ." IC 16–9.5–1–6. "Malpractice" is defined as meaning "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered . . . ." IC 16–9.-5–1–1(h). "Tort," as defined by the act, "means any legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another." IC 16–9.5–1–1(g). The source of the action is dependent upon traditional concepts of tort law and is derived either from the common law or statutory law already existing, but does not spring from the malpractice act. Since there is no common law action for wrongful death, the basis for such an action must be the Wrongful Death Act. The Medical Malpractice Act affects the right of action for wrongful death only to the extent of limiting the recovery and establishing the requirement of submission of the claim to the medical review panel created by the act. Further, it is obvious that the wrongful death claim is predicated upon the negligence of the defendant health care providers. If true, such a death is clearly "caused by the wrongful act or omission of another" and within the purview of IC 34–1–1–2.

Neither can we agree that the statutory definition of "representative," [3] relied upon by the dissent, supports an interpretation of the statute as creating an independent right of action for wrongful death. The definition merely enumerates those persons coming within the purview of the definition. Regardless of the need for the definition of the term "representative," we cannot justify creation of a cause of action from the fact of the presence of the definition in the act.

The argument that the Medical Malpractice Act creates a separate right of action for wrongful death also is demon-

before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this chapter and an opinion is rendered by the panel."

**3.** IC 16–9.5–1–1(f) provides: " 'Representative' means the spouse, parent, guardian, trustee, attorney or other legal agent of the patient."

strably untenable from the problems which might arise from such a position. If such action derives its source and vitality not from the Wrongful Death Act, but instead from the Medical Malpractice Act, then what persons are entitled to share in the proceeds if the action is successful, and in what manner are such proceeds distributed? If any person meeting the IC 16–9.5–1–1(f) definition of "representative" can bring the action, and if the decedent had a spouse, parent, guardian, trustee, attorney, or other legal agent, could any one, any combination, or all bring an action or actions for such death? Rather than creating new and independent causes of action, we believe the definitional language concerning the term "representative" simply indicates that such a person having a right to bring an action under existing law can maintain an action predicated upon medical malpractice. Thus, a spouse can bring an action for loss of consortium, a parent for loss of services resulting from death or injury of a child, a guardian for his ward. However, since a deceased person cannot have a guardian, attorney, or legal agent other than a personal representative, we believe the wrongful death claim founded upon medical malpractice must be brought by the only "other legal agent" of the patient authorized by law to institute such an action, that being the personal representative of the patient's estate. Such construction is consistent with both the Medical Malpractice Act and the wrongful death statute.

Further, since the act applies only to qualified health care providers, it would seem that an action against a non-qualified provider would have to proceed only under the wrongful death statute. Thus, if the defendants here were non-qualified providers, the present action would fail, but, according to the dissent, would not fail if the defendants were qualified health care providers under the statute. The result, then, would be that a health care provider who qualified under the act, the purpose of which, in part, is to provide protection, would be subject to a greater exposure than the non-qualified provider. This is hardly a result contemplated by the Medical Malpractice Act.

The contention that the provision tolling the running of the statute of limitation while the medical review panel procedure is in progress extends the time to have a personal representative appointed cannot be sustained. We are not dealing with a question of statute of limitations. Rather, we are concerned with the performance of conditions precedent to the right to bring an action for wrongful death. *General Motors Corp. v. Arnett, supra.* Thus, in our view, the only person who can file a proposed complaint for medical malpractice for wrongful death is the duly appointed personal representative appointed within two years of the date of the patient's death. Since Wallace was not so appointed she could not institute any proceeding for wrongful death resulting from medical malpractice either by filing a proposed complaint as provided in the Medical Malpractice Act or by an action filed in court.

We hereby hold that the right to prosecute a claim for wrongful death based upon medical malpractice is governed by the wrongful death statute with regard to the parties eligible to institute such proceeding, the persons for whose benefit recovery may be had, and the manner of distribution of such proceeds. We also hold that such a plaintiff must meet and comply with all conditions precedent necessary to bring such an action, specifically including being duly appointed as the patient's personal representative within two years of the date of death. We further hold that the procedural requirements of the Medical Malpractice Act, the filing of the proposed complaint and submission to the medical review panel, must be met if the defendant is a qualified health care provider under that act. Finally, we hold that the limitations on the amount of recovery in the Medical Malpractice Act apply to such a claim.

Since the claim for wrongful death here did not meet the required conditions precedent of the Wrongful Death Act in that Mary E. Wallace was not duly appointed

personal representative of Clarence's estate within two years of his death, summary judgment should have been granted on this claim. Therefore, we reverse the trial court's judgment denying summary judgment on the wrongful death claim.

*Issue Four*

■ Although we have held that summary judgment should have been granted on the wrongful death claim, we believe Mary E. Wallace could have an individual right of action for loss of consortium and services of her husband between the dates of April 11, 1978, and April 23, 1978. *Burk v. Anderson*, (1952) 232 Ind. 77, 109 N.E.2d 407; *Long v. Morrison*, (1860) 14 Ind. 595; *Heuer v. Loop*, (S.D.Ind.1961) 198 F.Supp. 546. The case of *Long v. Morrison, supra*, was an action predicated upon medical malpractice resulting in death of the wife. Our supreme court in *Long* cited the common law rule that no action for death survived, but held the husband had a right of action for loss of consortium. The defendants, relying upon *Burk*, say no cause of action for loss of consortium exists because of the shortness of time between the treatment and the death. However, in *Burk*, the time involved was a matter of a few hours. We deem it a question of fact for the trier thereof whether any damages for loss of consortium were suffered in this case.

■ The defendants next contend, assuming *arguendo*, a cause of action for loss of consortium exists in this case, the complaint sounds in wrongful death and is insufficient to put anyone on notice that a loss of consortium claim is being asserted. We do not so rigidly construe the complaint in this case. Therefore, we turn to the question of whether or not a genuine issue of fact exists concerning the standard of care afforded to Clarence by the Hospital and physicians.

■ Defendants contend that the trial court erred in denying the motions for summary judgment because they allege there is no genuine issue of material fact concerning the standard of medical treatment received by Clarence Wallace. In response to interrogatories filed by the appellants, Wallace submitted the names of Dr. Madura and Dr. Jessup as the expert witnesses she intended to call at trial. She also claimed in her response that the physicians were negligent in failing to diagnose and treat a ruptured spleen. Ali, Quiros and Vibul submitted an affidavit by Dr. Jessup which stated that he had no opinion on the standard care in the present action. They also submitted an affidavit by a secretary for one of the attorneys representing the physicians. The secretary affirmed that she had contacted Dr. Madura's office and talked to a secretary, who claimed Dr. Madura disavowed any knowledge of the case. Wallace's attorney submitted an affidavit, the substance of which was that he had made arrangements for Dr. Madura to testify.

This court has acknowledged that a negligence case is rarely appropriate for disposition by summary judgment, especially when the issue for resolution is whether the defendant exercised due care. *Bassett v. Glock*, (1977) 174 Ind.App. 439, 368 N.E.2d 18. Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories and admissions on file together with any affidavits and testimony disclose that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Whipple v. Dickey*, (1980) Ind.App., 401 N.E.2d 787. The moving party has the burden to establish that no genuine issue of material fact exists, and any doubt must be resolved in favor of the nonmovant. Even if the facts are not in conflict, summary judgment is inappropriate where there exists a good faith dispute as to the inference to be drawn from these facts. *Ang v. Hospital Corp. of America*, (1979) Ind.App., 395 N.E.2d 441, *trans. denied*.

If the moving party files affidavits and other materials establishing a lack of any genuine issue of material fact, the opposing party may not rest upon his pleadings, but must come forward with specific facts showing there exists a genuine issue for trial. *Whipple v. Dickey, supra*. Summary judgment was discussed in *Bassett v. Glock, supra*, a medical malpractice case, where

this court stated: "Although Bassett was under no obligation to present evidence sufficient to establish her claim, she was obliged to put forth sufficient basis upon which the court might find existence of a genuine triable issue." 368 N.E.2d at 23. It is with this standard that we must review the present case.

Defendants allege that the affidavits they submitted demonstrate that there exists no expert testimony to establish negligence. They further assert that the affidavit submitted by Wallace's counsel was not based upon personal knowledge and violated Ind.Rules of Procedure, Trial Rule 56(E).

The trial court did not err in denying the motion for summary judgment. Although the affidavit filed on Wallace's behalf may have been defective, the answers to interrogatories establish a genuine issue of material fact. The answers to the interrogatories state that the defending doctors failed to diagnose and treat a ruptured spleen. The answers also reveal that Wallace intended to call two expert witnesses. Ali, Quiros, and Vibul submitted an affidavit by one of the experts, Dr. Jessup, disavowing any personal knowledge in the case.

In determining whether a factual controversy exists, the trial court must resolve all doubts as to the existence of any genuine issue of material fact against the proponent of the motion for summary judgment and all facts asserted by the nonmovant in affidavits or admissions or by way of answers to interrogatories must be taken as true. *Johnson v. Wabash County*, (1979) Ind.App., 391 N.E.2d 1139. In the present case, the answers to interrogatories reveal a claim that the doctors failed to diagnose a ruptured spleen. The answers also disclose that Dr. Madura would testify. If the answers to the interrogatories had revealed that only Dr. Jessup would testify, then summary judgment might have been appropriate. The affidavit by the secretary was clearly defective because it was not based upon personal knowledge. However, answers to interrogatories reveal a genuine issue of fact as to whether Ali, Quiros and Vibul failed to diagnose and treat a ruptured spleen.

The Hospital has raised another contention as to why its motion for summary judgment should have been granted. In order to prevail against the Hospital, Wallace must demonstrate that the Hospital failed to exercise that degree of care that would be exercised by same or similar hospitals in similar communities under the same or similar circumstances. *See Whitaker v. St. Joseph's Hospital*, (1981) Ind. App., 415 N.E.2d 737. The Hospital submitted an affidavit that the standard of care received by Clarence Wallace was in conformity with the standard of care as existed in Boonville, Indiana. The Hospital alleges that Wallace has not challenged the standard of care and, therefore, the trial court erred in denying the motion for summary judgment.

The standard of review for summary judgment has been discussed previously. Applying this standard to the allegations of fact contained in the answers to interrogatories, we find that the trial court did not err. Wallace, in her response to interrogatories, stated the Hospital was negligent in failing to diagnose a ruptured spleen, failing to treat a ruptured spleen by timely surgical removal, failure to diagnose diabetes mellitus, and failure to treat diabetes mellitus. Wallace also listed Dr. Madura and Dr. Jessup as expert witnesses who would testify at trial. We believe that these answers to interrogatories have established a genuine issue of material fact.

In *Toth v. Lenk*, (1975) 164 Ind.App. 618, 330 N.E.2d 336, we discussed summary judgment in a medical malpractice case and stated:

"Additionally, there are times when summary judgment may be inappropriate even though the essential facts are not in dispute and appear to lead to one reasonable conclusion, because the matters appearing in the record before the court at the time do not foreclose the prospect of additional witnesses or evidence, which, if presented at trial, would be sufficient to avoid a directed verdict in favor of the proponent of the motion."

164 Ind.App. 624, 330 N.E.2d 340. In the present case we believe that there exists a dispute over the essential facts as well as the prospect of additional witnesses or evidence which would be sufficient to avoid a directed verdict. Thus, it was proper to deny the motions for summary judgment as they related to the loss of consortium claim and we affirm the trial court in that regard.

Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs on appeal are assessed one-half against appellants and one-half against appellee.

NEAL, J., concurs.

ROBERTSON, J., dissents with opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent from that portion of the majority opinion which holds that the trial court's denial of the defendant-appellants' motions for summary judgment was erroneous because Mary Wallace was not appointed as the personal representative within the two year condition precedent to recovery contained in Ind.Code 34–1–1–2.[1]

The majority opinion correctly points out that the right to maintain an action for wrongful death is purely statutory and did not exist at common law. *Bocek v. Inter-Insurance Exchange of Chicago Motor Club*, (1977) Ind.App., 369 N.E.2d 1093. There is only one proper plaintiff to bring a wrongful death action and that plaintiff is the personal representative. IC 34–1–1–2. The requirement that the action be brought by the personal representative is a condition precedent to recovery. Failure to satisfy this condition precedent results in the loss of the right to maintain an action for wrongful death. *General Motors Corporation v. Arnett*, (1981) Ind.App., 418 N.E.2d 546.

The *Arnett* decision did not involve a medical malpractice claim and therefore is distinguishable. I believe the provisions of the Medical Malpractice Act are controlling.

I further believe that IC 16–9.5–1–6 authorizes the "representative" as defined in IC 16–9.5–1–1(f) to bring an action on account of death.

The Medical Malpractice Act was enacted to control the high cost of medical malpractice insurance and thus, to guarantee medical services throughout the state. *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., 404 N.E.2d 585. The Act has specific provisions which alter a claimant's traditional recourse. The Act provides for the voluntary participation of health care providers which assures them of obtaining malpractice liability insurance. It establishes a Patient's Compensation Fund to assure complete compensation for any victim.

The Act also alters the pre-litigation procedures by requiring that a complaint be filed with the Indiana Insurance Commissioner. Upon such a filing, the statute of limitations is tolled pending the appointment of a medical review panel which issues a pre-ligation liability determination. After this determination has been rendered, the plaintiff may proceed to litigate his claim, including the right to trial by jury. The report of the medical review panel is admissible at trial and any party can call a member of the panel as a witness at trial. The Act also establishes a limitation on damages and regulates attorneys fees. *See, Hines v. Elkhart General Hospital*, (N.D. Ind.1979) 465 F.Supp. 421.

Wallace filed her complaint for death caused by medical malpractice with the Indiana Insurance Commission pursuant to provisions of the Medical Malpractice Act. The filing of a medical malpractice claim is governed by IC 16–9.5–1–6, which provides:

Subject to chapter 9[16–9.5–9–1—16–9.5–9–10], *a patient or his representative having a claim under this article for bodily injury or death on account of malpractice* may file a complaint in any court of law having requisite jurisdiction and demand right of trial by jury. No dollar amount or figure shall be included in the demand

---

1. In dissenting I am not expressing any view regarding the liability of the physicians, but rather that the present action is not appropriate for summary judgment.

in any malpractice complaint, but the prayer shall be for such damages as are reasonable in the premises. (Emphasis added).

The term "representative" is defined in IC 16–9.5–1–1(f) as follows:

"Representative" means the spouse, parent, guardian, trustee, attorney or other legal agent of the patient.

The Act also contains a time limitation for filing a claim, IC 16–9.5–3–1 provides:

No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two [2] years from the date of the alleged act, omission or neglect except that a minor under the full age of six [6] years shall have until his eighth birthday in which to file. This section applies to all persons regardless of minority or other legal disability.

I believe that language of IC 16–9.5–1–6 clearly authorizes Mary Wallace to maintain an action for wrongful death. The language provides that a "patient or his representative having a claim under this article for bodily injury or death" to file a complaint subject to the provisions of chapter nine.[2] Mary Wallace is a "representative" within the definition of IC 16–9.5–1–1(f) by the nature of her marital relationship with the deceased. I do not accept the idea that the Legislature did not intend, the provisions of Medical Malpractice Act to apply where the patient died as a result of the alleged malpractice. The express use of the language "bodily injury or death" evidences an intent by the Legislature that IC 16–9.5–1–6 should apply when the patient dies. The majority opinion ignores the rule of statutory construction that, if possible, effect and meaning must be given to each word and that no part of a statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Foremost Life Insurance Co. v. Department of Insurance*, (1980) Ind., 409 N.E.2d 1092.

The majority opinion does not believe that the Legislature intended to create a new right of action by enacting the Medical Malpractice Act. The majority opinion correctly notes that the purpose of the Act was to protect health care providers from malpractice claims and not create new claims of action. To achieve this purpose, the Act attempted to regulate all malpractice claims by bringing all claims, whether based on contract or tort, under the purview of the Act. Failure to submit a claim to the provisions of the Act is grounds for dismissal. *See, Johnson v. St. Vincent Hospital, Inc., supra.* In *Sue Yee Lee v. Lafayette Home Hospital, Inc.,* (1980) Ind.App., 410 N.E.2d 1319, we addressed the issue of whether the claim of the parents' of a child patient for loss of services and medical expenses was subject to the Act, and stated:

Viewed from the historical perspective we believe the conclusion is inescapable that our General Assembly intended that all actions the underlying basis for which is alleged medical malpractice are subject to the act. Since the obvious purpose of the act is to provide some measure of protection to health care providers from malpractice claims, and to preserve the availability of the professional services of physicians and other health care providers in the communities and thereby protect the public health and well-being, it is totally inconceivable that the legislature intended to extend this protection only to actions wherein the actual patient was the party plaintiff and to exclude other claims for medical malpractice wherein the plaintiff was not the actual patient, but one whose right of action was derived from the patient such as the parents' claim here.

410 N.E.2d 1324.

Mary Wallace's claim was derived from the death of her husband patient. It is likewise inconceivable to me that the requirements of IC 34–1–1–2 should act to release physi-

---

2. Chapter nine contains provisions concerning the submission of claims to the Department of Insurance and the establishment of medical re- view panel. There is no allegation that Mary Wallace has failed to comply with the provisions of this chapter.

cians from liability because the patient died as a result of the alleged negligence.

The majority opinion construes the definition of "representative" contained in IC 16–9.5–1–1(f) to merely enumerate who can maintain an action under existing law predicated upon malpractice. The opinion holds that only the "other legal agent" can maintain the action for wrongful death. The Act does not support such a construction because IC 16–9.5–1–6 regulates the filing of complaints and IC 16–9.5–1–1(f) defines who, other than the patient, can bring the complaint on account of malpractice. There is nothing within either of those provisions to support the construction adopted by the majority.

The majority opinion strongly believes that the Legislature had no intent to create a new cause of action when it enacted the Medical Malpractice Act. Even if IC 16–9.-5–1–6 can be so construed, the trial court's denial of summary judgment should be affirmed. At the very least, the provisions of IC 34–1–1–2 conflict with IC 16–9.5–1–6 and IC 16–9.5–1–1(f) as to who may bring an action for death on account of malpractice. In order to resolve this conflict, it is necessary to resort to rules of statutory construction.

When a statute is clear and unambiguous, there is no necessity for the application of the rules of construction other than the rule that words and phrases shall be taken in their plain, ordinary, and usual sense. *State v. Bress*, (1976) 169 Ind.App. 397, 349 N.E.2d 229. An appellate court is bound by the definitions set forth in the particular act, unless those definitions are inconsistent or repugnant to the legislative intent. *Gilbert v. State*, (1980) Ind.App., 411 N.E.2d 155. Where there is a conflict between statutes, the more recent provision is controlling, and a specific provision prevails over a general provision relating to the same subject matter. *Houtchens v. Lane*, (1965) 246 Ind. 540, 206 N.E.2d 131.

In applying these rules of construction to the present case, I believe that the court is bound by the definition of representative as contained in IC 16–9.5–1–1(f) because it is neither inconsistent nor repugnant to the Medical Malpractice Act. *Gilbert v. State, supra.* The language of IC 16–9.5–1–6 is more recent and more specific than the language of IC 34–1–1–2, and therefore is controlling. *Houtchens v. Lane, supra.* In construing the various provisions of the Act with IC 34–1–1–2, I believe that a representative as defined in IC 16–9.5–1–1(f) is authorized by IC 16–9.5–1–6 to bring an action for wrongful death pursuant to IC 34–1–1–2. Such a construction follows the rule that effect and meaning must be given to every word, if possible, and that no part of a statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Foremost Life Insurance Co. v. Department of Insurance, supra.*

The majority opinion contends that this opinion would reward those health care providers who are not qualified health care providers under the Medical Malpractice Act. While it is true that a non-qualified health care provider would only be liable if the personal representative brought the action, and thus, may escape liability where the qualified provider may be liable, the majority opinion ignores the fact that the non-qualified provider would still face much greater risk exposure because there is no limitation of damages under IC 34–1–1–2.[3]

The majority opinion also points out that a deceased person cannot have an agent and that there is nothing within the Medical Malpractice Act illuminating which representative is authorized to bring the action or how to distribute any proceeds. Such problems can be easily resolved by the construction that a representative under the Act can maintain an action for wrongful death or by Legislative refinement.

I am compelled to dissent from the majority opinion because the provisions of the Medical Malpractice Act conflict with IC

---

**3.** I seriously doubt that there exists sufficient number of non-qualified health care providers offering medical services to make any "un-

equal" exposure a serious danger to the populus of our state.

34–1–1–2 and thus, create a trap for the unwary. If Clarence Wallace had survived, Mary Wallace would be authorized to maintain this action. The majority opinion allows health care providers who are so negligent that their patient dies, to escape liability because the statutes are confusing. Such a holding contradicts public policy. The Medical Malpractice Act was enacted to insure health care service throughout the state and to maintain malpractice insurance by subjecting all malpractice claims to the provisions of the Act. I believe that Mary Wallace's claim should not be defeated because of conflicting provisions in the statutes. The majority opinion resolves the ambiguity by further protecting those who were responsible for the legislation.

I respectfully dissent from that portion of the majority opinion which holds that the motions for summary judgment should be granted. I concur in all other respects.